## DAVID D. STEWART *vs*. TICONIC NATIONAL BANK.

### Somerset.    Opinion December 22, 1908.

*Mistake of Law.    Mistake of Fact.    Mutual ˙Mistake.    Contracts.    Guaranty and*
*Subrogation.    Implied Warranty.*

If parties knowing all the facts of a transaction, come to an erroneous con-
clusion as to the legal effect of such facts, such conclusion is the result of
a mistake of law.

A mistake, to entitle a party to relief on account thereof, must be material
to the transaction, and affecting its substance, and not merely its inci-
dents.                                 '

The defendant bank had brought suit against the estate of one Napoleon B.
Turner, deceased testate, and recovered judgment.against the same and
execution was issued thereon. In that suit the plaintiff had acted as
attorney for the Turner estate. Certain real estate was seized on the
aforesaid execution and sold to the-defendant bank in satisfaction of the
execution. Immediately thereafter the bank began three actions to
recover possession of the real estate sold, one against the executor, one
against the heirs, and one against the widow of said Turner. Thereupon
the plaintiff under the date of December 13, 1898, and in behalf of the
executor of the Turner estate, wrote the president of the defendant bank
as follows: "If the bank will stop their suits, and make him & the heirs
and the widow no further expense, but let everything remain as it now
stands until the first day of next November, a month and five days before
the year's redemption would expire, I will guaranty that he shall pay the
whole amount due on the Exn. and take an assignment of it, and˙of the
sale ; and in case he fails to do this by Nov. 1, 1899, I will pay the bank
and take the assignment myself within fifteen days after Nov. 1, 1899."
This guaranty was accepted by the defendant bank and the writs were not
entered. October 16, 1899, the plaintiff wrote the president of the defend-
ant bank inclosing a check for $2291 and an agreement to be executed by
the defendant bank whereby the defendant bank agreed to assign to the
plaintiff the aforesaid judgment and also to convey to him "all the right,
title and interest" which the defendant bank had acquired in and to the
real estate of said Turner by virtue of the aforesaid sale on execution, and
also giving the plaintiff "full power and authority to avail himself of any
rights and remedies that said bank may have at law, or in equity, touch-
ing said real estate, in the name˙of said bank, but without expense to said
bank & saving them from all expense," and which said agreement was

duly executed by the defendant bank and returned to the plaintiff. The plaintiff then brought a real action in the name of the defendant bank against the widow of said Turner to recover a part of the real estate sold on the aforesaid execution. The defendant bank had no knowledge that this suit was commenced and pending until the president of the defendant bank was notified that it was in order for trial and he might be needed as a witness. The plaintiff also notified the defendant bank that he should expect the defendant bank to reimburse him for all expenses and loss in case the sale was held void. The defendant bank promptly repudiated any such liability. Eventually the action was reported to the Law Court and it was held that the aforesaid judgment obtained by the defendant had been erroneously entered up and that the execution issued thereon and the aforesaid sale on the execution were both invalid. Then, upon petition presented by the plaintiff in the name of the defendant bank, the record in the aforesaid suit brought by the defendant bank against the Turner estate was amended, proper judgment entered up and execution issued on which the same real estate was seized and sold to parties other than the defendant bank, for $2613, which said sum was received by the plaintiff. The plaintiff then brought an action against the defendant bank to recover, as for money had and received, the $2291 paid by him to the defendant bank for the aforesaid judgment obtained by it against said Turner estate, with interest, together with $490.59 for his costs, disbursements and services in the aforesaid suit brought against the aforesaid widow, and in subsequent proceedings to have the aforesaid judgment corrected and the real estate resold, less the amount he received from said sale and interest, that difference being $617.33.

*Held:* (1) That the agreement of December 13, 1898, when accepted by the defendant bank became a binding agreement between the parties for the payment by the plaintiff of the claim of the defendant bank against the Turner estate with right of subrogation to that claim.

(2) That the payment of the $2291 by the plaintiff to the defendant bank was made under the agreement of guaranty and subrogation and not as a consideration of a sale from the defendant bank to the plaintiff of its claim against the Turner estate.

(3) That there was no implied warranty to the plaintiff by the defendant bank of the correctness and consequent validity of the steps taken in the proceedings to enforce its claim against the Turner estate.

(4) That under all the circumstances of the case if the plaintiff in the payment of the money to the defendant bank and the defendant bank in receiving the same, were mutually ignorant of the fact that the aforesaid judgment was erroneously entered up and an invalid execution issued thereon, which invalidated the sale, but which judgment could be corrected, such mistake was not so material to the transaction, as the parties then regarded it, as is necessary to support an action at law to recover back the money paid by the plaintiff,

On report. Judgment for defendant.

Action of assumpsit upon an alleged written contract between the plaintiff and the defendant bank. The writ also contained a count for money had and received. Plea, the general issue. Also the defendant filed an account in set-off.

Tried at the March term, 1906, Supreme Judicial Court, Somerset County. At the conclusion of the evidence, the case was reported to the Law Court for "such decision as the rights of the parties may require."

The case is stated in the opinion.

*David D. Stewart*, for plaintiff.

*Charles F. Johnson*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, KING, JJ.

KING, J. This case comes to the Law Court upon report. The facts from which it has arisen are as follows : The defendant bank, having a suit pending in the Supreme Judicial Court for Somerset County, against the estate of Napoleon B. Turner, at the September term, 1898, of said court, took a judgment and one execution for $2251.20 debt and $15.26 costs of suit against the goods and estate of the testator. George K. Boutelle, president of the bank, acted as its attorney, and Mr. Stewart, the plaintiff in this suit, acted as attorney for the Turner estate. Certain real estate was seized on said execution and sold December 5, 1898 to the bank for $2182, in satisfaction of the execution.

Immediately thereafter the bank began three actions to recover possession of the real estate sold, one against the executor, one against the heirs, and one against the widow, of Turner.

Thereupon the plaintiff wrote Mr. Boutelle : "If the bank will stop these suits, and make him and the heirs and the widow no further expense, but let everything remain as it now stands until the first day of next November, a month and five days before the year's redemption would expire, I will guaranty that he shall pay the whole amount due on the exn and take an assignment of it, and

of the sale; and in case he fails to do this by Nov. 1, 1899, I will pay the bank and take the assignment myself within fifteen days after Nov. 1, 1899."

This guaranty was accepted and the writs not entered. Oct. 16, 1899, the plaintiff wrote Boutelle "Enclosed is check and agreement as per our interview of Saturday. Your signature as President of the Bank will be all right." The agreement was signed and returned, and is as follows:

"Received of D. D. Stewart twenty-two hundred and ninety-one dollars, and in consideration of that sum the Ticonic National Bank of Waterville hereby agrees to assign to him a judgment recovered by said bank in the Supreme Judicial Court for the County of Somerset at its September Term A. D. 1898, against Napoleon B. Turner as executor of the estate of his father, Napoleon B. Turner, late of St. Albans in said County of Somerset, deceased; and said Ticonic National Bank also further agrees to convey to said D. D. Stewart, for the consideration aforesaid, by good and sufficient deed, without expense to him, all the right, title and interest which said bank acquired to the estate of the said Napoleon B. Turner, Senior, and of the said Napoleon B. Turner, Jr. by virtue of a sale upon Dec'r 5, 1898, on the execution issued upon the judgment aforesaid, said bank having been the purchaser at the officer's sale of the real estate aforesaid, and received a deed of the same from the officer making said sale, which deed was duly recorded in the Registry of Deeds for said County of Somerset, and is to be referred to in the description of the property to be conveyed to said Stewart. Said assignment of said judgment, and said deed of said real estate to be made to him within thirty days after his request for the same. In the meantime he is to have full power and authority to avail himself of any rights or remedies that said bank may have at law, or in equity, touching said real estate, in the name of said bank, but without expense to said bank & saving them from all expense.

The Ticonic National Bank of Waterville.

By GEORGE K. BOUTELLE, President.

Waterville, Oct. 16, 1899."

At the December term of said court 1899, the plaintiff entered an action in the name of the bank against Mary C. Turner, widow of, and devisee under the will of, Napoleon B. Turner, to recover a part of the real estate sold on the execution.

The defendant had no knowledge that this suit was commenced and pending till September of the following-year when Mr. Boutelle was notified that the action was in order for trial, and he might be needed as a witness. To this action defense was made, that judgment and execution for both debt and costs had been entered and issued against the goods and estate of the testator contrary to the statute, and that the several parcels of land seized on the execution were sold in solido, of which defense this defendant was notified, and that the plaintiff would expect the bank to reimburse him for all expenses and loss in case the sale was held void. The defendant promptly repudiated any such liability. The case was reported to the Law Court and a decision in favor of the defendant was announced April 14, 1902 (*Bank* v. *Turner*, 96 Maine, 380).

Upon petition to the court at the September term 1902, presented by the plaintiff in the name of the bank, the record in the original suit was amended, proper judgment entered up, and execution issued on which the same real estate was seized and sold to other parties, Dec. 22, 1902, for $2613, which the plaintiff received.

The plaintiff claims to recover, as for money had and received, the amount he paid the bank on Oct. 16, 1899, with interest, together with $490.59 for his costs, disbursements and services in the suit against the widow, and in the subsequent proceedings to have the judgment corrected and the property resold, less the amount he received from said sale and interest, that difference being $617.33.

There is no evidence whatever that the defendant made any express representation to the plaintiff in respect to its judgment and execution against the Turner estate, or the sale of real estate thereon. If the defendant is under any liability to the plaintiff in the premises it must arise by operation of law from his payment to it of the amount due on the execution and its agreement to make the assignment and conveyance to him as specified in its written instrument of Oct. 16, 1899.

The plaintiff claims that the case falls within the well settled rule that in the sale of a chattel there is an implied warranty that it exists, unless it clearly appears that the parties intended the contrary.

His position is that the defendant sold to him, and he bought of it, a judgment of court against the Turner estate, together with the interest in certain real estate acquired by the defendant as purchaser at an officer's sale under said judgment, and that consequently the defendant must be held to an implied warranty that there was at the time of the sale such a subsisting valid judgment, and sufficient for the basis of a valid seizure and sale of said real estate; that in fact no such judgment existed, whereby the defendant is liable to him for his resulting damages.

The learned plaintiff in his brief directs the attention of the court to a great number of cases where the principle is applied, that a mutual mistake of fact may authorize the rescinding of a contract, and that in the sale of a chattel there is usually an implied warranty that it exists. These principles are well settled. But what shall be deemed such a mutual mistake, and under what circumstances and conditions the law will imply such warranty, may not be easily determined in every case.

Although the plaintiff's theoretical claim is twofold—an implied warranty by defendant that the thing sold existed, and a mutual mistake of the parties as to the existence of the subject matter of the contract, yet, when practically considered, it is all embraced in the one broad equitable proposition that the defendant received the plaintiff's money under such circumstances and conditions that reason and justice dictate it ought to be restored.

Is this claim sustainable? The question brings us directly to the necessity of correctly perceiving the true relation, conduct, and circumstances of the parties in the premises, from which it is to be determined if any unexpressed obligation must be implied by law as having been assumed by the defendant; and also to determine the real purpose and consideration for the payment, which actuated the parties, and whether there was a mutual mistake materially affecting the substance of that purpose and consideration.

On December 13, 1898, the plaintiff made an express guaranty in writing that the executor would pay the amount due on the execution "and take an assignment of it, and of the sale; and in case he fails to do this by Nov. 1, 1899, I will pay the bank and take the assignment myself within fifteen days after Nov. 1, 1899."

It has been noted that this guaranty was in consideration that the defendant would drop the suits commenced for the real estate sold. The guaranty was accepted and became a binding agreement between the parties for payment by the plaintiff of the defendant's claim against the Turner estate, with the right of subrogation to that claim, if the executor did not pay it.

On Oct. 16, 1899, the plaintiff paid the bank the full amount due on the execution "which Mr. Boutelle figured up  .  .  .  .  including the officer's fees for making the sale and recording the deed to the bank," as the plaintiff states in his brief.

That payment was made, we think, under the agreement of guaranty and subrogation, and not as the consideration of a sale from defendant to the plaintiff of its claim against the Turner estate. The plaintiff suggests that from his statement in the letter of Oct. 16, 1899, "enclosed is check and agreement as per our interview of Saturday," the court should find that a new agreement was made at that interview in place of the existing one for payment and subrogation. We think not. There is no evidence of such new agreement, and no reason is perceived why the defendant should make a new agreement, since the full payment of its debt was secured by guaranty.

The written agreement of Oct. 16, 1899, added nothing materially to the defendant's obligations arising from the conventional subrogation; it only specified in explicit terms how and when the bank should make the necessary transfers, which were deferred evidently for the plaintiff's accommodation. The fact that the transfers were deferred, the stipulation for the conveyance of "all the right, title and interest" acquired by the bank under the sale of the real estate, and the provisions that the plaintiff in the meantime could "avail himself of any rights and remedies that said bank may have  .  .  .  .  in the name of the bank, but without expense to said

bank & saving them from all expense," are more indicative of sub-rogation than of a sale.   But there is another and more important fact to be noted.   In a letter from the plaintiff to Mr. Boutelle, dated Dec. 20, 1898, disapproving the suggestion of the latter that the costs of the three suits to be dropped should be covered by the guaranty, he said :   "If this is not satisfactory to the bank, I should withdraw the proposition.   I have doubt as to the validity of the sale, & should fight it, if necessary, before paying any costs in the three suits or advising the heirs to pay them.   As a new sale could eventually be made, if necessary, the heirs I presume would raise no question about the one already made unless an attempt is made to sustain suits under it.   Please advise me of the conclusion the bank reaches."

To this Mr. Boutelle replied :   "I dislike exceedingly your sug-gestion that my client's position is an improper and untenable one. I am sorely tempted to join issue with you on both these points and let the court decide which one of us is right; but of course the interests of my client call for practical results far more than any-thing else ; and as the bank can well afford to sacrifice the small amount of costs on the three suits for the sake of the guaranty which resulted from them we will let the agreement stand."

This correspondence, disclosing so clearly the relation and circum-stances of the parties under which the payment of Oct. 16, 1899, must have been made and received, together with the other facts disclosed, leaves no doubt in our mind that such payment was but the fulfillment of the guaranty, and entitled the plaintiff only to the right to be substituted in place of the defendant in respect to its full claim against the Turner estate with all its rights, remedies and securities incident thereto.

And we are of opinion, that the law does not imply, in the absence of agreement, and under the relation and circumstances of the parties as disclosed in this case, a warranty to the plaintiff by the defendant of the correctness and consequent validity of the steps taken in proceedings to enforce that claim, and especially in view of the fact that the plaintiff in connection with his guaranty expressly

notified the defendant that he regarded such steps as invalid, but inconsequential, however, since they could eventually be retaken.

The plaintiff further claims that, whether the transaction of Oct. 16, 1899, be regarded as a sale or payment with the right of subrogation, there was a mutual mistake of fact as to the subject matter of the contract and that in consequence the consideration wholly failed.

It does not, perhaps, sufficiently appear that there was any mutual mistake of fact, unless the assumption of the parties that the judgment recovered was valid, not knowing all the facts on which that assumption was based, be a mistake of fact.

If knowing all the facts they came to an erroneous conclusion as to their legal effect, such conclusion would be the result of a mistake of law.

But assuming that they did not know, as a fact, the form and manner in which the judgment was entered up, and both supposed, as they evidently did, that it had been correctly done in accordance with law, still we are of opinion that such mistake is not such a mistake of fact, measured in the light of all the facts and circumstances disclosed, as would entitle the plaintiff to maintain this action.

A mistake, to entitle a party to relief on account thereof, must be material to the transaction, and affecting its substance, and not merely its incidents. *Baker* v. *Fitzgerald*, 204 Ill. 325 ; *Hecht* v. *Batcheller*, 147 Mass. 335, 338 ; *Bridgewater Iron Co.* v. *Enterprise Ins. Co.*, 134 Mass. 433, 436 ; *McCobb* v. *Richardson*, 24 Maine, page 83.

The plaintiff claims that there was no judgment existing as mentioned in the agreement to be assigned ; that there was "nothing which the defendant could assign to the plaintiff," and that "the failure of the consideration was total." In this we think he is mistaken. There was a judgment as described in the agreement. It proved to be erroneous, but not void. It needed only to be corrected which could be, and was, done on application to the court.

The real subject matter of the transaction between the parties, the thing of value for which the plaintiff paid his money, and that was to be transferred to him, was the bank's debt which, as he states in one of his letters "became fastened upon the estate." That the plaintiff so considered admits of no doubt. His correspondence shows that he regarded the steps taken to enforce that debt upon the real estate not comparable in value to a few dollars for costs, but his guaranty shows that he regarded the debt itself at its full face value.

And on the part of the defendant, in this connection, it must be noted that while Mr. Boutelle believed the instrumentalities he had used, and the steps he had taken, to enforce his claim, were not valueless, yet, he acted under the expressed sense of duty that he should accept the guaranty and thereby secure practical results without imposing upon his client any risks or obligations.

We are therefore also of opinion, under all the circumstances of this case, that if the plaintiff in the payment of the money, and the defendant in receiving it, were mutually ignorant of the fact that the judgment had been erroneously entered up, and an invalid execution issued thereon, which invalidated the sale but which judgment could be corrected, such mistake was not so material to the substance of the transaction, as the parties then regarded it, as is necessary to be established to support this action at law to recover back the money paid.

It follows then that the judgment of the court is that the plaintiff's action is not maintained, and accordingly the entry must be,

*Judgment for defendant.*