JAMES E. HEATH, ET AL.

*vs.*

MAINE PUBLIC SERVICE COMPANY

Kennebec.    Opinion, June 7, 1965

*Richard B. Sanborn* and *Lynwood E. Hand*,
    Attorneys for Plaintiffs.

*Roger A. Putnam*, Attorney for Defendants.

SITTING: WILLIAMSON, C.J., WEBBER, TAPLEY, SULLIVAN,
    MARDEN, JJ. SIDDALL, J., sat at argument but retired
    before the decision was rendered.

TAPLEY, J.   On appeal from a decree of the Public Utilities Commission.   Members of Farm Home Electric Cooperative, Inc. petitioned the Maine Public Utilities Commission (hereinafter referred to as the Commission) requesting it to authorize the Maine Public Service Company, a regulated public utility, to service them from one-half mile North of Silver Ridge Line, South to Silver Ridge South Line, with electric power.   After notice to Farm Home Electric Cooperative, Inc., Maine Public Service Company and the petitioners, a public hearing was held at the Town Hall in Patten, Maine on July 28, 1964.   After hearing, the Commission ordered and decreed that the Maine Public Service Company extend its lines to service the area of Silver Ridge to supply service to the petitioners.

Eastern Maine Electric Cooperative, Inc. and Farm Home Electric Cooperative, Inc. appealed from the order and final decision of the Commission.

Farm Home Electric Cooperative, Inc. came into existence in 1940.   The Commission at that time authorized Farm Home Electric Cooperative, Inc. to serve the Inhabitants of Patten, Plantations of Mt. Chase and Staceyville, in Penobscot, and the Towns of Benedicta, Merrill, Dyer Brook,

Crystal, Island Falls, Sherman and Hersey, and Plantations of Moro, Silver Ridge and the unorganized Township #7, Range 5, in the County of Aroostook. In the Spring of 1964 Farm Home Electric Cooperative, Inc. and Kingman Electric Cooperative, merged into Eastern Maine Electric Cooperative, a larger cooperative, serving the Calais area and environs.

At the hearing on July 28, 1964 there was evidence adduced from which the Commission found that the petitioners suffered inadequate service from the operation conducted by Farm Home Electric Cooperative, Inc. There were evidenced, without contradiction, the facts that power was interrupted by power failures, loss of frozen food, loss of business, burned out motors and substantial periods of time without service at all. There were abnormal voltage variances and fluctuations which caused, among other things, an inability of the consumer to use and enjoy his electrical appliances. In addition to power failures and fluctuation of voltage there is testimony establishing the fact that service maintenance was poor and unsatisfactory. Resulting from this hearing came the decree of the Commission:

> "That as soon as practicable Maine Public Service Company extend its lines to service the area of Silver Ridge, which is described in the petition of the Petitioners."

The basic problem in this case concerns the authority of the Commission over the Farm Home Electric Cooperative, Inc. and other cooperatives of like nature. This requires a review and analysis of the statutory history of the cooperatives and the legislative intent as to their legal relationship with the Commission. In the result of the analysis and review rests the decision in this case. In 1941 the Legislature passed an act entitled "Cooperative Enabling Act." Chap. 51, Sec. 1, R. S. 1954 (35 M.R.S.A., Sec. 2801).

The purpose of the act is "Cooperative, nonprofit membership cooperations may be organized under Chapters 221 to 227 for the purpose of supplying electric energy and promoting and extending the use thereof." Chap. 51, Sec. 2, R. S. 1954 (35 M.R.S.A., Sec. 2802). It was the obvious purpose of the Legislature to legislate an Enabling Act authorizing the formation of rural electrification cooperatives and to grant them specific powers in order that there would be a uniformity of organization and operation among such cooperatives.

One of the most pertinent and controlling sections of the "Cooperative Enabling Act" is Sec. 24, Chap. 51, R. S. 1954 (35 M.R.S.A., Sec. 2809). This section is couched in the following language:

"Cooperatives shall not be deemed to be public utilities. Except with the consent of the Public Utilities Commission, no premises shall receive service from any cooperative, if such premises were, on the date of the organization of such cooperative, receiving or prior thereto had been receiving electric service from a public utility, or which are situated on those portions of roads or ways along which the distribution lines of an existing utility are located, nor if such service from the cooperative is to be rendered in the territory in which an existing utility is authorized to render such service, unless and until such service has been requested of the existing utility by various persons whose premises are so located as to be fairly representative of the route or routes of the proposed distribution line or lines of the cooperative to be built in such territory and the utility has either refused or neglected for an unreasonable length of time to furnish such service. Any existing utility may give its consent to a cooperative to serve any portion of the territory which said utility is authorized to serve. Any person who has been refused membership in or service by a cooperative may complain of such refusal to the Public Utili-

ties Commission which may, after hearing, upon finding that such service may reasonably be rendered, order such person to be served." (emphasis supplied.)

We point out that the authority of the Commission can only be that authority that is granted to it by the Legislature. The Commission, without question, has authority and dominion over so-called regulated public utilities. The appellants in this case have the burden of showing that electric cooperatives are regulated public utilities within the intent of the Legislature and the purposes prescribed in the "Cooperative Enabling Act."

In 1940 some residents of Silver Ridge and surrounding towns formed a rural electric cooperative to serve the territory. It was known as Farm Home Electric Cooperative. Following its incorporation in 1940 Farm Home Electric Cooperative, upon petition, was authorized by the Commission to provide electric service to Silver Ridge and other areas in the vicinity of Silver Ridge, in the County of Aroostook (U. #1605).

The question of the authority of the Commission over electric cooperatives arose in 1941, *In Re Sandy River Electric Cooperative, Incorporated, Maine Public Utilities Commission*, U. #1631, 37 P.U.R., (N.S.) 201, 210. The Commission found:

"- - - Examine as much as it can the law and the evidence submitted in this case, and allowing full latitude to the considerations of public policy in the premises, this Commission finds it necessary to interpret Chap. 230 (P. L. Me. 1931) in such a manner that it is mandatory for a cooperative formed thereunder, whether a public utility or not, to apply to it for designation of territory in which the cooperative might serve.

"So it must be ruled that the Public Utilities Commission has jurisdiction over cooperatives, in-

> cluding this petitioner formed under Chap. 230, Public Laws of 1931, especially in the matter of designation of territory. - - - We agree with the petitioner that under this chapter a corporation may be either a public utility or not a public utility."

Sandy River Electric Cooperative, Inc. apparently brought to light the question as to just what authority the Commission did have over electric cooperatives. The 1941 Legislature passed legislation in the form of amendments with intent to clarify the then existing statute so that there would be no question about the scope of authority of the Commission over electric cooperatives. The record of the 90th Legislature (1941) supplies strong evidence of the intent of the Legislature concerning the Commission's authority and power in respect to electric cooperatives.

> "- - - there was much discussion and opposition at the mere suggestion that these cooperatives were not subject to the regulation of the Public Utilities Commission.

> "- - - we are very definitely saying by this amendment that a cooperative cannot carry its service to any individual receiving service from a public utility, thereby preserving and protecting their rights under the law. - - -

> "The question has come up, and it will continue to crop up as to why a cooperative should not be controlled by exactly the same regulations as any public utility. I think the answer is obvious, because the Supreme Courts of at least two states have already gone on record—and their decision has not been questioned—wherein they state that a cooperative organized under the laws herein mentioned is not subject to the Public Utilities Commission.

> "- - - these cooperatives are organized simply and solely for the purpose of serving themselves."
> *Legislative Record* (1941), pages 836, 837.

It is obvious from a reading of the legislative record that the Legislature did not intend an electric cooperative to be a regulated utility. It is equally clear it was intended that no cooperative should invade the territory of a regulated utility without approval of the Commission.

The Legislature has conferred jurisdiction upon the Commission to regulate cooperatives under the following conditions: A cooperative must obtain the consent of the Public Utilities Commission (1) in order to supply service to those premises which were receiving electric service from a public utility on the date of the organization of the cooperative; (2) to supply service to those premises situated on those portions of roads or ways on which the distribution lines of an existing utility are located; (3) if such service from the cooperative is to be rendered in the territory in which an existing utility is authorized to render such service and such service has been requested of the existing utility by various persons whose premises are so located as to be fairly representative of the route or routes of the proposed distribution line or lines of the cooperative to be built in such territory and the utility has either refused or neglected for an unreasonable length of time to furnish such services; (4) when any person has been refused membership in or service by a cooperative the Commission may, after hearing, upon finding that such service may reasonably be rendered, order such person to be served.

The authority to organize an electric cooperative in Maine is through an Enabling Act entitled "Rural Electrification Cooperatives." 35 M.R.S.A., Chaps. 221 to 227 inclusive. The purpose of the Enabling Act is expressed in the following language:

> "Cooperative, nonprofit membership corporations may be organized under Chapters 221 to 227 for the purpose of supplying electric energy and promoting and extending the use thereof." 35 M.R.S.A., Sec. 2802.

The Enabling Act sets out in detail the prescribed procedures to create, operate and dissolve a cooperative by setting out (1) general provisions; (2) organization; (3) powers; and (4) dissolution. Within the frame work of this Enabling Act is contained all of the rights and power granted to a cooperative upon its organization. The *Enabling Act*, under Sec. 2809, in plain and unequivocal language, states:

> "Cooperatives shall not be deemed to be public utilities."

Then follows language which places cooperatives in a limited and restrictive sense under the regulatory powers of the Commission. By legislative pronouncement the Commission has no authority over a cooperative excepting that restricted and limited authority which is defined in Sec. 2809. Any orders of the Commission must be based on jurisdiction over utilities otherwise they would be meaningless and unenforceable. It naturally follows that if the Commission has no authority over cooperatives, its orders and decrees would be ineffective as to the cooperatives unless they related to the conditions specifically described in Sec. 2809.

Farm Home Electric Cooperative, Inc. urges that the Commission had no right to order Maine Public Service Co. to serve residents of the area served by the cooperative for the reason that in 1940 the Maine Public Service Co., which was then serving the area, consented to the cooperative serving portions of the area and they thereby abandoned its franchise. In February, 1940 Farm Home Electric Cooperative, by petition addressed to the Commission, requested authority to serve certain territory in the County of Aroostook, Silver Ridge being one of the towns. At the time of the hearing Maine Public Service Co., which was then serving the area, made no objection to the petition. The Commission, after hearing, found, by decree U. #1605,

that *public convenience and necessity* required the Farm Home Electric Cooperative, Inc. be given authority to furnish the area described in the petition. This hearing was had under provisions of Chap. 68, Sec. 4, R. S. 1930 (now 35 M.R.S.A., Sec. 2302):

> "No such consent and no license, permit, or franchise shall be granted to any person, association, or corporation to operate, manage or control any public utility of the kind named in the preceding section in any city or town where there is in operation a public utility engaged in similar service or authorized therefor until the public utilities commission has made a declaration after a public hearing of all parties interested that public convenience and necessity require such *second public utility*." (emphasis supplied.)

This section applied to a corporation created under the general laws for the purpose of making, generating, selling, distributing and supplying electricity. This type of corporation was subject to the regulatory powers and control of the Commission. The Commission at that time considered the cooperative as a public utility and subject to provisions of Sec. 4 which required a showing of public convenience and necessity before the franchise of an existing public utility could be invaded. We take the position that the consent of the Maine Public Service Company to the petition of Farm Home Electric Cooperative, Inc. that it be permitted to serve part of that area serviced by Maine Public Service Company was not in any way an abandonment.

The appellants claim that the Commission was in error in ruling that the appellants have no franchise area and had no authority to allow the Maine Public Service Company to invade the territory now being served by the Eastern Maine Electric Cooperative, Inc. They further contend that this invasion could only be approved and sanctioned if it were shown, by satisfactory proof, that the

principles of public convenience and necessity required two electric companies to serve the community. In speaking of the necessity of showing public convenience and necessity, we are directed to the provisions of Secs. 3 and 4 of Chap. 50, R. S. 1954 (35 M.R.S.A., Secs. 2301 and 2302). These statutory provisions apply only to regulated public utilities, not to cooperatives. We have shown that the appellants are not public utilities within the meaning of the statute authorizing their creation.

Appellants have cited *Re Public Service Company of New Hampshire,* 87 P.U.R. (N.S.) 213. In this case an electric cooperative objected to the proposed extension of the lines of the Public Service Company of New Hampshire into the area served by the cooperative. The New Hampshire statute involved provided, in substance:

> "No public utility shall construct an electric service line to serve any customer where the property to be served is within 1,000 feet of existing central service station, electric line or lines of another public utility, without first having obtained the permission and approval of the Commission. Co-operative marketing associations, as defined in R. L., Chap. 273 (under which the New Hampshire Electric Cooperative, Inc. is incorporated) shall, for the purposes of the first sentence of this section, *be regarded as public utilities* and subject to the jurisdiction of the Commission." (emphasis supplied.)

The Court said, on page 214:

> "The subject matter of the instant application falls within the purview of this statute."

It is obvious that the New Hampshire Commission accepted jurisdiction on the basis that the cooperative was considered to be a public utility insofar as the invasion by another utility of the area served by the cooperative was concerned. This case is not pertinent or applicable be-

cause in the case at bar the appellants, by statute, are not public utilities.

The case of *Black River Electric Cooperative, Inc.* v. *Public Service Commission, et al,* 120 S. E. (2nd), 6 (S.C.), is pertinent, in its holdings, to the instant case. Black River Electric Cooperative, Inc. sought to prohibit a regulated electric utility from extending its power lines into an area adjacent to the area served by the cooperative. The crux of the case is that a cooperative under the provisions of the statutes was not a public utility and, therefore, had no standing before the Public Service Commission. Under provisions of Sec. 24 (Sec. 2809), which states that cooperatives are not public utilities, there is no language employed which gives the right of exclusive franchise to a cooperative as against a public utility. Conversely, the words used in the section demonstrate a plain and unmistakable legislative intent that a cooperative shall not encroach upon the territory of an existing public utility unless the utility has either refused or neglected, for an unreasonable length of time, to furnish service or has consented that a cooperative may serve any portion of the territory which the utility is authorized to serve. We conclude that the appellants have no franchise in the area.

We hold that the Eastern Maine Electric Cooperative, Inc. and Farm Home Electric Cooperative, Inc. are not public utilities and do not come under the jurisdiction of the Commission except in a limited and restricted sense as defined in Sec. 2809.

During the course of the hearing a motion was made by the appellants to dismiss the petition for pleading inadequacy and for improper notice. Other reasons for dismissal were that petitioners did not exhaust their remedies within the corporate setup; that the Commission does not have jurisdiction to allow invasion of its franchise area by a public utility and, finally, that the proceedings by the petitioners

were premature because no opportunity was given the Eastern Maine Electric Cooperative, then presently serving the Silver Ridge area, to remedy the poor service claimed by the petitioners. We find there is no merit in appellant's attack on sufficiency of complaint and notice, particularly in view of the fact that they were not challenged until the hearing had proceeded to an appreciable degree without complaint. Insofar as the other reasons for dismissal are concerned, they are without force as the appellants are not public utilities and have no jurisdictional standing with the Commission as to the subject matters of their complaints.

The order is:

*Appeal denied.*

WEBBER, J. (concurring) I concur in the opinion and the result. I would merely emphasize that the statute (35 M.R.S.A., Sec. 2809; R. S. 1954, Ch. 51, Sec. 24) gives only carefully restricted jurisdiction to the Public Utilities Commission with respect to the furnishing of service by cooperatives. The Commission is without any power to compel the cooperative to improve the quality of its service where some service is in fact being rendered to its members. A public utility is afforded an exclusive and monopolistic franchise in return for its submission to the control of the Commission with respect to rates, quality of service and the like. The position of the appellants here seems to me to be that of one who would have his cake and eat it too. They desire the competitive advantage offered to regulated public utilities without paying the price which such utilities have to pay to the public in order to secure such protection. The legislature has not seen fit to confer upon these cooperatives the preferred position which they now seek. I am in agreement with the concurring opinion of a member of the Public Utilities Commission in the instant case in which he stated:

"Thus in my view, the customer who is located in the franchised territory of a regulated public utility and receiving service from an unregulated cooperative may request service by the public utility; *and if it is economically feasible for the utility to render the service so requested, he is entitled as a matter of law to receive such service,* whether his reason be a desire for improved service, more equitable rates, or simply a desire to come under the protection of this Commission and the laws administered by it." (Emphasis mine)