Leslie R. DICKINSON et al., Lawrence Car-
ter et al., Arthur L. Crouse et al., David
Kennard et al.

v.

MAINE PUBLIC SERVICE COMPANY.

Supreme Judicial Court of Maine.

July 30, 1968.

Lynwood E. Hand, Houlton, Richard B. Sanborn, Augusta, for intervenor.

Roger A. Putnam, Portland, John G. Feehan, Augusta, for Public Utilities Commission.

Before WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WEBBER, Justice.

This was an appeal from a decision rendered by the Public Utilities Commission in four cases consolidated for the purpose of hearing and subsequent appellate review. In each case groups of petitioners, all customers of Eastern Maine Electric Cooperative, Inc. (Cooperative), requested that the

Commission order Maine Public Service Company (Maine Public) to furnish them with electric service. Cooperative was permitted to intervene. The Commission ordered service to 19 of the petitioners and denied service to 33 others. In addition the Commission ordered conditional service to 16 petitioners, the condition being that these petitioners reaffirm their request for the new service. From this order the intervenor has appealed.

The course of litigation has been a long and stormy one. One of the petitions was lodged in December, 1964 and the others in August, 1965. While these petitions were pending the Legislature enacted P.L.1965, Ch. 348 which purported to make cooperatives "public utilities" and grant them territorial immunity. The Commission then dismissed the petitions in compliance with what it understandably deemed to be the mandate of the new statute. In Dickinson v. Maine Public Service Co. (1966) Me., 223 A.2d 435, we reversed on the ground that the statute violated constitutional principles in conferring on cooperatives all of the benefits enjoyed by fully regulated utilities without subjecting them to the same regulatory control. In 1967 the Legislature, no doubt with a view to meeting constitutional requirements, further amended the pertinent statutes by P.L.1967, Ch. 382 which in effect gave to the Commission regulatory control over cooperatives for all purposes. Before these amendments became effective, however, as they did on October 8, 1967, the Commission on October 3, 1967 rendered the decision here appealed from. It is perhaps not unreasonable to hope that our decision may finally lay at rest issues which have occupied so much of the attention of the Legislature, the Commission and the Law Court during the past three years.

## FORM OF PETITION IN U–#2607

■ The four petitions carried Commission docket numbers U–#2607, U–#2647, U–#2648 and U–#2649. In U–#2607

(Dickinson case) the intervenor seasonably filed motion to dismiss on the ground that the petition did not conform with the Rules of Practice and Procedure promulgated by the Commission. We view the insufficiencies complained of, as did the Commission, as matters of form and not of substance. It is apparent that neither the defendant nor the appellant had any difficulty in comprehending the issues and preparing to meet them and there is no indication of any prejudice to any party. Under these circumstances it was not error as a matter of law to deny the motion to dismiss. Cf. Newell v. North Anson Reel Co. (1965), 161 Me. 461, 214 A.2d 97.

## EFFECT OF P.L. #1967, CH. 382

■ The Commission was of course cognizant of the fact that the Legislature had enacted amendments to become effective on a date subsequent to the Commission decree. In this connection the Commission stated: "We take judicial notice of the fact that the Maine Legislature has changed the existing law by Chapter 382 of the Public Laws of Maine, 1967, AN ACT to Grant Public Utilities Commission Control over Cooperatives. This law, however, does not become effective as such until ninety-one days after the adjournment of the Legislature which will be October 8, 1967. We are bound by the law that is in existence at the time of our decision." The Commission accordingly based its decision primarily on its determination as to whether or not it was economically feasible for Maine Public to render the requested service. Heath v. Maine Public Service Co. (1965), 161 Me. 217, 210 A.2d 701. This was the applicable test under the law as it existed on October 3, 1967, the date of the decree. As a quasi-judicial body the Commission had a duty to render decisions on petitions which had been pending more than two years and was under no obligation to defer its decision because of a change in the law effective *in futuro*. Moreover, the same Legislature enacted P. L.1967, Ch. 10 which amended 1 M.R.S.A.

Sec. 302 to read: "Actions *and proceedings* pending at the time of the passage or repeal of an Act are not affected thereby." (Italicized words added by amendment). The petitions were "proceedings" pending before the Commission, Dickinson, supra, and as such would by force of the amendment be governed by the law as it existed before the enactment of P.L.1967, Ch. 382. P.L.1967, Ch. 10 became effective on October 7, 1967, whereas as we have seen P.L. 1967, Ch. 382 by express legislative fiat became effective one day later. Decision does not rest, however, on this difference. Even if the amendments had become operative on the same date, the result would have been the same. P.L.1967, Ch. 10 and Ch. 382 are not conflicting, mutually inconsistent or irreconcilable. Each can be given its full force and effect without diminishing the effect of the other, "and both must stand as statutes of the State." Stuart v. Chapman (1908), 104 Me. 17, 24, 70 A. 1069, 1072. So construed, the statutes provided prospectively new criteria for determination by the Commission of petitions filed by customers of a cooperative seeking service from another utility serving the same area—but these new criteria are not applicable to petitions already pending on October 8, 1967. It is apparent, therefore, that the appellant was not prejudiced by the fact that the order of the Commission was promulgated a few days before the amendments became operative.

In so holding, we are mindful of the fact that P.L.1967, Ch. 382, Sec. 1 contains language which purports to make it partially retrospective. The second paragraph of the new Sec. 2301 of 35 M.R.S.A. as amended by Sec. 1 states:

. "*After September 1, 1967,* where a cooperative organized under chapters 221 to 227 and a public utility distributing electrical energy are serving or authorized to serve the same city, town, plantation or other governmental unit, neither the cooperative nor said utility shall bring electrical service to any new service location unless it shall have notified the other and the Public Utilities Commission, in writing, of the request by the party for such electrical service, where the bringing of such service requires the extension of existing distribution facilities. If, after such notice, the other opposes the bringing of electrical service to said new service location, it shall, within 7 days of the receipt of the notice of proposed service, file objections to the bringing of such electrical service with the Public Utilities Commission sending a copy of said objections to the utility or cooperative, as the case may be, and to the party requesting the electrical service. If objections are filed, the commission shall immediately set the matter down for hearing, and shall determine which shall serve, and pending the final determination of the right to serve, the commission may order temporary service to be brought to said prospective new service location without prejudice to the rights of any party involved. If, after such notice, either the cooperative or the utility fails to file its objections as aforesaid, it will be conclusively presumed that the cooperative or the utility, as the case may be, has consented to the bringing of such service." (Emphasis ours)

Sec. 5 for the first time makes cooperatives fully regulated public utilities and thus eliminates the constitutional problems which we noted in Dickinson, supra. Dickinson teaches, however, that territorial protection and submission to Commission regulation are inseparable. For the very reasons delineated in Dickinson the Legislature could not grant to cooperatives territorial protection as of September 1, 1967 while not subjecting them to full regulatory control until October 8, 1967. To satisfy constitutional requirements, therefore, we read the above quoted paragraph of Sec. 1 as though the words "After September 1, 1967" were deleted therefrom. Thus construed, the statutes as amended provide a consistent and harmonious pattern which

places cooperatives on the same footing as other regulated utilities with respect to both protection and control.

For the above reasons, it was not error for the Commission to apply the law on October 3, 1967 as it existed prior to the enactment of P.L.1967, Ch. 382.

## EFFECT OF SERVICE CONTRACTS

■ All of the petitioners had executed written contracts with the Cooperative to purchase all their electric energy requirements from it for a period of one year (already elapsed) and thereafter "until canceled by at least 30 days written notice given by either party to the other." There is no suggestion that these contracts had been terminated at the time of the Commission's decree. In this connection the decree stated: "The question with regard to the relationship between the Cooperative and its customers, the Cooperative being an unregulated utility, were matters solely within the province of those two parties and if a Petitioner wished to seek regulated electric service and breach an existing contract with the Cooperative, we believed that was for the Petitioners' sole determination and not a matter for the Commission to pass upon; nor assuming that a contractual relation does exist, do we believe that such a relationship is a bar to this Commission's hearing and determining the present requests." We think the Commission fairly stated the appropriate limitations on its competence to decide contractual issues between petitioners and a nonregulated utility outside its control. Moreover, no breach of the contracts had occurred and none could properly be anticipated. There was nothing to prevent any or all of the petitioners from giving the 30 day notice of cancelation in such season that the contracts would be terminated before any service ordered by the Commission could be rendered by Maine Public to the petitioners. The cases relied upon by the appellant are readily distinguishable upon their facts. If the contracts are later breached before valid termination and are otherwise enforceable, the appellant may seek appropriate relief in a court of competent jurisdiction. The Commission is not such a tribunal.

## EFFECT OF CONTRACT BETWEEN UTILITIES

■ Since in our view the Commission has dealt adequately and accurately with this issue, we quote what we deem to be the more significant and dispositive portions of the decree:

"Another issue which was raised before the Commission, and which was common to all the cases, was the effect of a contract between Farm-Home Electric Cooperative, Inc., a predecessor to Eastern Maine Electric Cooperative, Incorporated, and Maine Public Service Company. This contract was dated June 14, 1940, and we find that Eastern Maine Electric Cooperative, Incorporated, is the successor under this contract to all of the rights of Farm-Home Electric Cooperative, Inc. The pertinent provisions of the contract which would apply to these cases are as follows:

'17. Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

'18. Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines, but no services shall be ren-

dered from such interconnecting facilities in competition with the other party.

'20. This Agreement shall become effective on the date of connection of the system of the Company to the system of the consumer and shall remain in effect for a period of three years from the date of connection and thereafter, from year to year, unless and until at least one year prior to the expiration of the then effective contract year or any subsequent year, either party shall notify the other in writing of its desire to terminate the Agreement at the expiration of the said year.'

The testimony was clear that neither party had terminated this contract.

\* \* \* \* \* \*

Assuming for the purposes of this decision that this contract is valid, and expressly reserving the right at any subsequent time to question the validity of the Agreement, either as of the date of the execution of same, or as of this date, the Commission finds that this contract is not a bar to the action contemplated in this proceeding. In fact, Maine Public Service Company's position is consistent with the contract and its denial of service to Petitioners is based upon it. This contract at the time of its execution was a contract between a fully regulated utility, Maine Public Service Company, and a prospective customer, an electric cooperative. The purpose of the contract, as we understand it, was to define certain rights between the respective contracting parties, but always reserving as we interpret the contract, to this Commission and any other body properly constituted and authorized, the authority to change or alter the understanding between the parties as the public interest and demands shall require with specific reference to the right to serve certain customers. The key terms of the contract in both paragraphs 17 and 18 are

the words, 'unless ordered so to do by a lawful order issued by a properly constituted authority.' We find, and so rule, that this Commission is a properly constituted authority within the meaning of the contract to order Maine Public Service Company to furnish electric service to the Petitioners, if we find it economically feasible, notwithstanding the contract of June 14, 1940. As we find the parties today, Maine Public Service Company is fully regulated and Eastern Maine Electric Cooperative (successor to Farm-Home Electric Cooperative, Inc.) is a nonregulated utility. The reservation in the contract clearly vests in this Commission the authority to act in this proceeding. The Commission, therefore, will proceed to make the determination required under Heath with regard to economic feasibility.

It has been suggested that Maine Public Service Company cannot be ordered to serve the Petitioners in this case because Maine Public Service Company breached the contract by offering service to the Cooperative's customers.

\* \* \* \* \* \*

We point out that the contract does not by its express terms or by necessary implication bar Maine Public Service Company from soliciting members of the Cooperative to become a customer.

We were asked to take judicial notice in U#2648 of whether or not this contract was on file with the Commission and our action or inaction with regard to same. We have found that a copy of the contract in question is on file with the Commission but we find that the Commission has neither approved nor disapproved the contract.

There is no problem of abandonment of the right to serve the Petitioners by Maine Public Service Company arising out of the consent of Maine Public Service Company that the Cooperative serve the Petitioners or their predecessors in title. Under similar circumstances, the

Law Court held that such consent was not to be considered an abandonment. Heath v. Maine Public Service Company, 161 Me. 217, 224; 210 A.2d 701, 706; 59 P.U.R.3d 321, 325 (1965)."

In view of the Commission's decision not to let the contract stand in the way of its ordering the requested service where economically feasible, we need not here determine whether or not the contract contravened public policy as being in restraint of trade, especially where it never received the *express* approval of the Commission. But see Montana-Dakota Utilities Co. v. Williams Electric Coop. (1959), 8 Cir., 263 F.2d 431 and Ohio Midland Light & Power Co. v. Columbus & South. Ohio E. Co. (1954), Ohio Com.Pl., 123 N.E.2d 675.

## EFFECT OF LACK OF LOCATION PERMITS

■ Maine Public prematurely sought pole permits which would be required to render the requested service, and its applications were rejected. The Commission properly declined to view these rejections as a reason why it should not order service. The Commission rightly concluded that its determination as to whether or not the service should be rendered should come first—and the applications for required locations should follow. If Maine Public exhausts all legal means of obtaining locations on public or private property without success, it can then seek to be relieved by the Commission from the obligation to render such service as is thereby affected. The Commission was not required at this stage to assume an ultimate inability to obtain necessary locations.

## CONDITIONAL ORDERS OF SERVICE

■ All the petitioners originally requested that Maine Public be ordered to render them service. During the long period of time that elapsed while these petitions were in litigation, some petitioners remained constant, some withdrew and others vacillated. In the case of those who had adopted contradictory positions, the Commission ordered, where service was economically feasible, that they be afforded one final opportunity to decide whether or not they still desired service. Maine Public was authorized to convey to them the information that they could have the requested service if they still desired it, and to obtain their final decisions. This order for conditional service was a fair and appropriate method of obtaining a determination as to which of the original petitioners were still actively seeking the requested service.

## DETERMINATION OF ECONOMIC FEASIBILITY

■ As noted above, the Commission carefully analyzed the evidence with respect to the economic feasibility of rendering the requested service in the case of each petitioner, and ended by granting some and denying others. The applicable rule was recently restated in Biddeford & Saco Gas Company v. Portland Gas Light Co. (1967), Me., 233 A.2d 730, 736 in these terms:

"Whether findings of fact by the Commission are warranted by the law, is a question of law, Public Utilities Commission v. Cole's Express, 153 Me. 487, 492, 138 A.2d 466, but Commission factual finding, as basis for its decree, is final if supported by any substantial evidence. Public Utilities Commission v. Johnson Motor Transport, 147 Me. 138, 143, 84 A.2d 142. Additionally it has been pointed out that evaluating public needs in the utility field involve 'questions peculiarly within the study, experience and good judgment of this commission, which was established by the Legislature to pass upon these kindred questions. The judgment of the court in such matters is not to be substituted for that of the commission.' Public Utilities

Commission v. City of Lewiston Water Commissioners, 123 Me. 389, 391, 123 A. 177."

■ It suffices to say that the record discloses "substantial evidence" supporting the factual findings of the Commission and its decision with respect to economic feasibility.

The entry will be

Appeal denied.

WILLIAMSON, C. J., and DUFRESNE, J., did not sit.