Lillian O. KENNIE

v.

CITY OF WESTBROOK and/or Nationwide
Mutual Insurance Company.

Supreme Judicial Court of Maine.

June 2, 1969.

Francis C. Rocheleau, and Roger P. Welch, Westbrook, for plaintiff.

James R. Desmond, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

Upon combined appeals from pro forma decrees by the Superior Court, based in turn upon separate decrees of the Industrial Accident Commission (Commission), which granted annulment of a compensation agreement and dismissed a petition for counsel fees.

The controversy originates in the death on August 11, 1966 of one Perley C. Kennie, an employee of the City of Westbrook, whose dependent widow seasonably filed claims for benefits under the Workmen's Compensation Act, (Act), the first, dated January 20, 1967, for accidental death of her husband, and later, dated May 16, 1967, for death under the occupational disease provisions of the Act.

From this beginning, a factual, procedural and legal snarl developed, a significant part of which was occasioned by "too many cooks in the kitchen." During the processing of these claims, two attorneys (A and B) from the office representing the insurance carrier (Carrier), and an adjuster (H) for the Carrier participated on defendant's side, and two attorneys (X and Y) from independent offices, but associated for the purposes of this case, participated on behalf of the petitioner. Attorney "X" is also shown on the docket as representing the defendant city.

Unfortunately it is necessary to risk compounding the confusion in an effort to correlate the facts.

When the claims were filed, Attorney "A," first in the case for the Carrier, and Attorney "Y," second in the case for the petitioner, assumed that the widow's benefits were the same for either accidental or occupational death. This was a mistake of law, the benefits under the then statute for occupational death being formulated whereby the maximum amount payable at a weekly rate was in the amount of approximately $12,600.00, while the weekly benefits payable for an accidental death ran to the widow until her death, or remarriage. Based upon the life expectancy of the widow, these maximum benefits represented over $70,000.00. The occupational death benefits will be herein characterized as "limited," and the accidental death benefits as "unlimited."

Carrier filed no answer to the first petition alleging accidental death, but filed answer by Attorney "A" for the claim for occupational death, admitting all allegations.

After negotiations between Attorneys "A" and "Y," both under the mistake of law above referred to, which negotiations centered upon the issue whether the death was accidental or occupational, and possibility of a "lump sum settlement," at which time the significance of the cause of death was not emphasized, inasmuch as both men understood the benefits to be the same, Attorney "A" instructed Mr. H, an adjuster for the Carrier, to draw an agreement for submission to the Commission, which Mr. H did, in terms of accidental death, and sent this agreement to Attorney "X," who had first been consulted by the petitioner.

Attorneys "X" and "Y" revised the wording of this agreement, dated August 8, 1967, expressing the death as accidental, reciting the compensation payable weekly, procured the petitioner's signature and returned it in multiple copies to Mr. H.

At about this time, one of the Industrial Accident Commissioners telephoned Attorney "Y" suggesting that an Agreed Statement of Facts should be filed, whereupon Attorney "X" telephoned Mr. H to return the Agreement and copies (of August 8, 1967), which Mr. H did and the Agreement and copies went into Attorney "Y's" file.

After the suggestion from the Commissioner, Attorney "Y" contacted Attorney "A," and Attorney "A" prepared an Agreed Statement of Facts, by letter dated August 31, 1967, in which it was stipulated that Mr. Kennie's death was occupational:

"Wherefore, his widow is entitled to compensation at the maximum rate during the remainder of her life, or until remarriage."

Attorneys "X" and "Y" joined in this and it was forwarded to the Commission.

At this point a Commissioner pointed out that the compensation agreed upon in the statement for occupational death was contrary to the statute, and that due to this contradiction the Commission could not issue a decree upon it.

There was further discussion between Attorneys "Y" and "A" on the nature of the death and the possibility of a lump sum settlement. Following this conversation, Attorney "Y" felt that Attorney "A" had reneged on his agreement to pay the unlimited benefits, withdrew from his file the Agreement on accidental death and unlimited benefits, which had been prepared through Mr. H, the adjuster, and sent them through channels to the Commissioner of Labor for approval, with a copy to Attorney "A."

This precipitated heated discussions between Attorneys "A" and "Y." "About a week later" Attorneys "A" and "Y," with Attorney "X" on an extension telephone, talked again, during which it was agreed that everyone made mistakes and that Attorney "A" would go along with the "Agreement." Labor Commissioner's approval was given September 21, 1967 and the Agreement in due course reached the Commission.

"About a week later" the Agreement was returned to Attorney "A" to change the date on which compensation was to start, the deceased having worked the day of his death, which Attorney "A" did and returned it as "corrected" to the Commission by letter dated September 19, 1967. Thereafter, and prior to October 2, 1967, the Commission made the award for unlimited compensation in the light of the Agreement, dismissed the pending petitions, and benefit payments to petitioner began.

By petition dated October 17, 1967, counsel for petitioner sought an allowance for legal services. This petition referred to the death as by accident, to the Agreement of August 8, 1967 and its approval by the Commission, but did not allege the filing of the original petitions[1] for compensation within the terms of the Act. At this stage of the case, Attorney "B" filed answer dated November 16, 1967 to the petition for counsel fees, admitting its allegations and joining in request for hearing.

"One day," date unfixed, but it may be concluded that it was after November 16, 1967, Attorney "A" received a report from Mr. H, according to Attorney "A's" testimony, that either Attorney "X" or Attorney "Y,"—Mr. H believed it was Attorney "X," had represented to "H" that the only form of agreement that the "Commission would accept" was that form which "H" had prepared. Attorney "A" had not previ-

---

1. § *110. Witness and attorney's fees allowable*

"When the commission or commissioner finds that an employee has instituted proceedings under this chapter on reasonable grounds and in good faith or that the employer through or under his insurance carrier has instituted proceedings under this chapter, the said commission or commissioner may assess the employer costs of witness fees and a reasonable attorney's fee, when in the commission's or commissioner's judgment the said witnesses and the services of the said attorney were necessary to the proper and expeditious disposition of the case."

ously been aware of that alleged representation and "immediately" filed a petition dated December 18, 1967 to annul the Agreement.

Two allegations in this petition are disputed:

"2. That at the time this agreement was signed by the carrier's representative, it was represented to the carrier that this was the only form of agreement that the Commission would accept."

"7. While the Petitioner and the Petitioner's attorney and the Respondents' attorney were still negotiating as to the form in which the petition should be finally brought, the Petitioner's attorney without any notice to the Respondents' attorney, forwarded to the Commission the original petition signed by the parties although it was well known to both attorneys that said agreement had been abandoned at the time the parties attempted to prepare the agreed statement."

Commissioner heard both petitions,—to amend the agreement and for counsel fees, on March 19, 1968. By decree dated June 6, 1968 Commissioner "found as a fact that the carrier understood that the Agreement was the only form of Agreement that the Commission would accept" and "it is clear that the Agreement had not only been abandoned, but forgotten" and ordered the Agreement set aside.

By decree of June 14, 1968 Commissioner found that no proceedings had been instituted under the Act and dismissed the petition for counsel fees.

By stipulation, review of both decrees is sought by combined appeals.

### Petition to Annul

█ The Commissioner's finding "that the carrier understood that the Agreement was the only form of Agreement that the Commission would accept" is final, if supported by some competent evidence. Bernier v. Coca-Cola Bottling Plants, Inc.

et al., Me., 250 A.2d 820, [1] 821. There was competent evidence to support the finding. With what effect?

Section 102 of the Act (39 M.R.S.A.) provides that:

"Upon the petition of either party at any time the commission may annul any agreement which has been approved by the Commissioner of Labor and Industry provided it finds that such agreement was entered into through mistake of fact by said petitioner or through fraud. * * *."

The "petitioner" as used above is the petitioner for annulment, not the petitioner for compensation.

█ The Commission is a creature of the statute and "possesses only such jurisdiction, powers, and authority as are conferred upon it by express legislative grant, or such as arise therefrom by implication as necessary and incidental to the full and complete exercise of the powers granted." Conners' Case, 121 Me. 37, 40, 115 A. 520, 521.

█ We find no authority in the Commission to annul an agreement which has been filed by one party on the ground that it has allegedly been "abandoned" or "forgotten" by both parties. No fraud has been attributed to such resurrection of the Agreement, by pleading or the Commissioner's decree.

█ The appeal must be premised upon the fact that Carrier mistakenly understood that the Agreement which was retrieved by Attorney "Y" from his files and put through channels to the Commissioner of Labor and the Commission "was the only form of Agreement that the Commission would accept."

"A mistake on one side may be a ground for rescinding a contract, * * * but it cannot be a ground for altering its terms." Hudson Structural Steel Com-

pany v. Smith & Rumery Co. et al., 110 Me. 123, 127, 85 A. 384, 386, 43 L.R.A., N.S., 654.

But "(a) mistake, to entitle a party to relief on account thereof, must be material to the transaction, and affecting its substance, and not merely its incidents." Stewart v. Ticonic National Bank, 104 Me. 578, 586, 72 A. 741.

"(A) mistake of fact takes place either when some fact which really exists is unknown, or some nonexistent fact is supposed to exist." Crawford's Case, 127 Me. 374, 376, 143 A. 464.

■ The only material facts which have ever been in dispute are a) whether the death of Mr. Kennie was accidental or occupational, and b) what benefits ensued. The petition to annul implies broadly that Mr. H prepared the Agreement dated August 8, 1967 supposing that the Commission would accept, on the merits, no other agreement. There is nothing to show that such alleged Commission-originated fact existed. A mistake cannot be founded upon an unknown non-existent fact. Treating the alleged Commission-originated requirement as a non-existent fact which Mr. H supposed to exist, Mr. H and Attorneys "A" and "B," all acting for the Carrier, are forced to contend that Carrier mistakenly supposed that the Commission could premise its "acceptance" of a settlement agreement upon a requirement that the parties stipulate that an accidental death be considered occupational, or vice versa, or that compensation be awarded in amounts contrary to the Act. Such contention is self defeating. Additionally Attorney "A" subsequently and directly ratified the Agreement and Attorney "B" subsequently indirectly ratified it.

If the allegation in the petition to annul is read literally, whereby the existing, but unknown fact, or the non-existent fact which was supposed to exist, relates only to the "form" of the agreement, it is not a matter of substance, but merely incidental.

*Counsel fees*

■ It is obvious that the Commissioner directed his attention only to the petition for counsel fees which was not framed within the terms of the statute and on its face failed to show that the petitioner had filed petitions for compensation. The evidence before the Commissioner disclosed such petitions and their existence as a matter of record with the Commission, although it is true that when the compensation agreement was approved by the Commissioner of Labor and Industry, the Commission dismissed the petitions under the provisions of § 101 of the Act. From many citations in "Words and Phrases" it is held that the term "proceeding" is a very comprehensive one and, generally speaking, means a prescribed course of action for enforcing legal rights and remedies. Similar courses of action initiated before quasi judicial tribunals have been recognized as "proceedings." See Federal Trade Commission v. Jantzen, Inc., 386 U.S. 228, 87 S.Ct. 998, [4–7] 1001, 18 L.Ed.2d 11 (petition before Federal Trade Commission); Dickinson v. Maine Public Service Company, Me., 244 A.2d 549, [2–6] 552, (petition before Public Utilities Commission); and State v. Kerr, 117 Me. 254, 260, 103 A. 585.

There can be no argument that the word "institute" means to set up, originate, initiate,—and filing a claim for compensation would qualify as instituting proceedings. The Commissioner did not turn his decision on the failure of the petition to come within the words of the statute, but upon a factual finding that no proceeding had been instituted, which is contrary to the evidence before him. The widow-petitioner having instituted proceedings, she or her counsel was qualified to seek a determination that her claim was made in "good faith," "on reasonable grounds" and whether the services of counsel "were necessary to the proper and expeditious disposition of the case." The appeal is sustained.

Appeals sustained.