1998 ME 262

**David T. BURGGRAFF and Roberta Rubly–Burggraff**

v.

**Verna W. BAUM and Joseph T. Baum.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1998.

Decided Dec. 10, 1998.

James W. Strong (orally), Allison A. Stone, Thomaston, for the Plaintiffs.

Frederick M. Newcomb (orally), Rockland, for the Defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, Justice.

[¶ 1] Verna and Joseph Baum appeal from the judgment entered after a bench trial in the Superior Court (Knox County, *Marsano, J.*) rescinding a contract for the purchase of land. They argue the trial court erred by applying the doctrine of mutual mistake of fact to rescind their contract. We agree and vacate the judgment.

[¶ 2] This case arises from an installment contract to purchase roughly eight-and-a-half acres of undeveloped shorefront property at Mill Cove in St. George. Verna Baum and her husband, Joseph Baum, agreed to sell the lot to David Burggraff and his wife, Roberta Rubly–Burggraff, in July 1994. Roberta drafted the contract, which did not include a contingency clause, and the parties signed it without the advice of counsel.

[¶ 3] The parties originally became acquainted in April 1993 when the Burggraffs began renting the Baums' house on nearby Patten Point. The couples became close friends, "almost like family." During the summer or fall of 1993, the Burggraffs offered to buy a portion of the Baums' land at Mill Cove after Verna joked that she would gladly sell the property if she could get the amount of the town's latest tax assessment. The Burggraffs wanted the lot because it had an ocean view and a potential building site near the water. Negotiations proceeded slowly because the land had been in Verna Baum's family for generations and had sentimental value to her. During this time, the parties discussed in detail their plans for the land, both emphasizing potential building sites and the importance of limiting development that could detract from its natural beauty.

[¶ 4] The Burggraffs planned to build both a primary residence and a cabin on the lot. They desired (and the Burggraffs understood) that the cabin be located within seventy-five feet of the water, with the residence up the hill from the water in the woods. Throughout negotiations, the parties continued their close relationship, and discussed the Burggraffs' building plans frequently. Verna Baum testified that she understood the cabin was to be a building near the water for meditation and to store kayaks. Joseph Baum walked the property with the Burggraffs, pointing out at least two possible building sites and discussing percolation tests of the soil. Eventually, David Burggraff began to gather stones for the foundation near the water, and Joseph Baum cut six or seven trees for him near the same site.

[¶ 5] Roberta Rubly–Burggraff researched some of the zoning statutes that applied to the land. She determined that the general state setback was 100 feet, while the St. George setback was only seventy-five feet. Both parties believed, based on her efforts and what they called "common knowledge," that those were the only relevant zoning ordinances that applied to the lot. In April 1995, after the contract was signed, the Burggraffs hired a civil engineer to discuss improving an access road that led to the building site of the primary residence. He informed the Burggraffs that the land was in the town's Resource Protection District (RPD), which generally extends 250 feet from the water's edge.[1] While the site cho-

---

1. The ordinance applies:
   to all land areas within 250 feet, horizontal distance, of the normal highwater line of any great pond, river or saltwater body; within 250 feet, horizontal distance, of the upland edge of a coastal or non-forested freshwater wetland; and within 75 feet, horizontal distance, of the normal high-water line of a stream. This Ordinance also applies to any structure built on, over or abutting a dock, wharf or pier, or other structure extending beyond the normal high-water line of a water body or within a wetland.

   St. George, Me., Shoreland Zoning Ordinance § 3 (Oct. 6, 1997).

sen for the main residence would not be affected, neither the access road nor the cabin could be built in the RPD without permits from various local authorities.

[¶ 6] When the Burggraffs informed the Baums that the lot was in the RPD, they asked for a price reduction. The Baums responded by saying they would consider it, but first wanted to see if the town would reduce the property tax assessment. In light of the zoning restrictions, the Baums were able to convince the town to reduce the assessment. When the parties returned to negotiate a reduction in price, they were unable to come to an agreement, and in October 1995, the Burggraffs stopped making payments and demanded a refund.

[¶ 7] In June 1996, the Burggraffs filed a complaint seeking rescission of the contract. After a bench trial, the court found that neither party knew the land was in the RPD, and granted rescission based on the doctrine of mutual mistake of fact. It is well-settled that a contract is not legally binding if both parties have entered into it laboring under a good-faith mistake of fact. *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 918 (Me. 1976). A mistake of fact, however, differs from a mistake of law. When, as here, both parties know the facts, yet have an erroneous conclusion as to their legal effect, the misconception is a mistake of law. *Stewart v. Ticonic Nat'l Bank*, 104 Me. 578, 586, 72 A. 741, 745 (1908).

[¶ 8] Both the Burggraffs and the Baums were aware that the property was subject to at least some land use restrictions. As evidenced by Rubly-Burggraff's attempt to research the zoning ordinances that applied to the property, the parties could have informed themselves accurately of what could be built at Mill Cove. Her research, however, failed to uncover the existence of the RPD, and therefore the parties interpreted the local land use regulations to permit their proposed building plans. They were not mistaken about the fact that restrictions applied to the lot, but rather about what those restrictions were and what legal effect they had. That is a mistake of law, and not a basis to rescind a contract. *See Moulton v. Moulton*, 1998 ME 31, ¶ 10, 707 A.2d 74, 76 (vacating decision granting rescission where mistake related to law, not fact). The rationale behind this rule is that the parties are presumed to know the law, or at least capable of verifying it, whereas they cannot be expected to be acquainted with all factual matters, regardless of their diligence. *Webb v. Webb*, 171 W.Va. 614, 301 S.E.2d 570, 574 (1983); *see also* Letter from Thomas Jefferson to Andre Limozin (Dec. 22, 1787), *in Papers of Thomas Jefferson*, at 451 (Julian P. Boyd ed., 1955) ("Ignorance of the law is no excuse in any country. If it were, the laws would lose their effect, because it can always be pretended."). We therefore conclude that the parties labored under a mistake of law, and that rescission of the contract is inappropriate.

The entry is:

Judgment vacated. Remanded for entry of judgment in favor of defendant.