947 A.2d 560

Margaret Virginia JANUSZ

v.

Francis Peter GILLIAM.

No. 95, Sept. Term, 2007.

Court of Appeals of Maryland.

May 9, 2008.

**526**

Charles S. Rand, Rockville, for appellant/cross–appellee.

Stacy B. Talbott, Rockville, for appellee/cross–appellant.

Argued before BELL, C.J.,* RAKER, HARRELL, BATTAGLIA, GREENE, MURPHY and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, Judge.

This case involves the interpretation of a Voluntary Separation and Property Settlement Agreement ("the Agreement") entered into between Margaret Virginia Janusz and Francis Peter Gilliam. In their Agreement, which was incorporated, but not merged, into the judgment of divorce, the parties agreed that Mr. Gilliam would maintain in effect his survivor's annuity [1] with the federal Civil Service Retirement System, for the benefit of Ms. Janusz. Unfortunately, upon the grant of their divorce, Ms. Janusz became ineligible, pursuant to federal law, 5 C.F.R. § 838.802(b) (2008), to receive the benefits of the survivor's annuity.

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. The survivor's annuity is payable to a beneficiary upon the death of the retiree.

Upon discovering that she was ineligible to receive the benefits from the survivor's annuity, Ms. Janusz filed suit in the Circuit Court for Montgomery County, requesting that the court rescind the Agreement, or alternatively find that Mr. Gilliam had been unjustly enriched. The trial court found no basis for either rescinding the contract, or finding that Mr. Gilliam had been unjustly enriched. Ms. Janusz appealed to the Court of Special Appeals and, before the intermediate appellate court decided the appeal, we granted certiorari. *Janusz v. Gilliam*, 402 Md. 352, 936 A.2d 850 (2007).

We are asked to decide whether a mutual mistake of law by the parties to a contract, the assumed future entitlement, post-divorce, of Ms. Janusz to Mr. Gilliam's survivor's annuity benefits, is grounds for rescinding their contract, or in the alternative, whether Mr. Gilliam has been unjustly enriched. Although we hold that a mutual mistake of law is no basis for rescission or a claim of unjust enrichment, we shall neither affirm nor reverse the trial court's judgment and remand the matter, pursuant to Md. Rule 8–604(d)(1) [2], for the limited purpose of determining whether a Court Order Acceptable for Processing ("COAP"), executed by the parties' attorneys, is a valid modification of the original Agreement. If so, the COAP explicitly states what actions the parties must take in the event that Ms. Janusz is ineligible to receive benefits under the survivor's annuity. Finally, because the trial court, in its ruling, did not address Mr. Gilliam's allegations that his attorney did not have the authority to bind him by signing the COAP, the court should address that allegation as well. If the

---

**2.** Md. Rule 8–604(d)(1) provides as follows:

(d) **Remand.** (1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

trial court determines that the COAP is not part of the parties' Agreement, ultimately, the court must determine whether Mr. Gilliam has been unjustly enriched, because Ms. Janusz did not, as the trial court determined, waive her right to a claim for unjust enrichment.

## FACTUAL AND PROCEDURAL BACKGROUND

■ Margaret Virginia Janusz, appellant,[3] and Francis Peter Gilliam, appellee, were married on August 5, 1996. The parties entered into a Voluntary Separation and Property Settlement Agreement on February 14, 2000. On March 1, 2000, the court entered a Judgment of Absolute Divorce, and the Agreement was incorporated, but not merged, into the Judgment. The Agreement provided, in relevant part:

3. *Rehabilitative Alimony.* The Plaintiff [appellee] agrees to pay the Defendant [appellant] rehabilitative alimony in the amount of $1,000.00 for thirty-six (36) months effective March 1, 2000. These payments shall be mailed to the Defendant [appellant] at an address or location to be provided by the Defendant [appellant] and this address or location shall not be changed more than once a year. Additionally, Plaintiff [appellee] agrees to continue funding and maintain in effect his survivor's annuity through the [federal] Civil Service Retirement System at a cost to him of approximately $4,320.00 per year, with monthly benefits available to the Defendant [appellant] after his death, in the amount of $1,500.00 plus cost of living increases. If the Plaintiff [appellee] should die before the end of the thirty-six (36) month period of rehabilitative alimony, such said alimony will cease and survivor's annuity will be effective. This agreement as to alimony is non-modifiable.[4]

---

**3.** Appellant is also a cross-appellee, and appellee is also a cross-appellant. For simplicity, we will refer to each only as appellant and appellee respectively.

**4.** The survivor's annuity is not alimony. We have consistently held as follows:

\* \* \*

5. *General Mutual Waiver of Claims.* The parties hereby specifically agree that their intention is to conclude by this Agreement all claims and disputes between them; accordingly, apart from the agreements and promises specifically set forth in this Agreement, the parties hereby mutually and irrevocably waive and abandon all manner of claim against each other and their estates, regardless of the legal, factual, or equitable basis for any such possible claim; and the parties further specifically agree that this mutual waiver and abandonment of claims against each other and their estates shall be binding upon their heirs, assignees, and successors in interest of any sort whatsoever.

\* \* \*

12. *Modification of Agreement.* The parties hereby agree that there shall be no modifications of this Agreement except in writing and executed with the same formality of this Agreement. No other oral representations or agree-

---

"[P]ayments to a wife, even if referred to in a separation agreement or in a decree as 'alimony' will not be considered to be alimony unless they are payments to continue during the joint lives of both husband and wife and so long as the parties live separate and apart." *Bebermeyer v. Bebermeyer*, 241 Md. 72, 76–77, 215 A.2d 463, 466 (1965). We have defined "technical alimony," or alimony in a legal sense, as "a periodic allowance for spousal support, payable under a judicial decree, which terminates upon the death of either spouse or upon the remarriage of the spouse receiving the payments or upon the reconciliation and cohabitation of the parties." *Horsey v. Horsey*, 329 Md. 392, 410, 620 A.2d 305, 314–15 (1993); *see also Courson v. Courson*, 213 Md. 183, 186, 129 A.2d 917, 919 (1957) (noting that alimony "is not a portion of his real estate, to be assigned to her in fee simple but a provision for her support, to continue during their *joint lives*, or so long as they live separate.") (emphasis added). Merely including the survivor's annuity in the paragraph labeled "Rehabilitative Alimony" is insufficient to characterize the annuity as alimony. *See Bebermeyer*, 241 Md. at 76–77, 215 A.2d at 466. The survivor's annuity does not begin to pay benefits until appellee's death, and as such, it does not qualify as alimony, which terminates at the death of either spouse. *See Horsey*, 329 Md. at 410, 620 A.2d at 314–15. Therefore, the survivor's annuity in this case, as a matter of law, is not alimony, and is thus unaffected by the non-modifiable alimony clause of the Agreement.

ments, or oral or written agreements not specifically incorporated by reference in this Agreement, whether made before or after the execution of this Agreement, shall be of any force and effect.

A COAP,[5] incident to the couple's divorce, was executed on April 13, 2000, by both parties' attorneys in the divorce proceeding,[6] and signed also by Domestic Relations Master Ann Sundt, and then Circuit Court Judge Patrick Woodward. The COAP provided in relevant part:

4. The defendant [appellant] is entitled to a survivor annuity based on the plaintiff's [appellee's] monthly retirement benefits. The amount of her survivor annuity has been elected by the plaintiff [appellee] and, at the time of divorce, has an approximate value of $1,500.00 per month. It is the intention of the parties to maintain the plaintiff's [appellee's] election.

\* \* \*

7. If any provision of this Order designated for implementation by the Office of Personnel Management is found by that agency to be unacceptable for processing, the parties shall renegotiate their Agreement, if necessary, and draft a revised Order which will accord with both their intent and the agency's requirements insofar as that is possible. The parties shall request the Court to enter a Modified Order acceptable for Processing, substituting their renegotiated provisions in the Order nunc pro tunc.

8. If it is not possible to draft a Court Order Acceptable for Processing which both accords with the parties' original intent and meets the agency's requirements, the parties shall adjust their Separation Agreement to assure that each

---

**5.** A COAP is similar to a Qualified Domestic Relations Order ("QDRO"). For further discussion of the COAP, see Section II of the Discussion.

**6.** Appellee did not sign the COAP and claims he did not authorize his attorney to sign the COAP.

party benefits in a manner equivalent to the provisions originally negotiated.

9. The Court retains jurisdiction to enforce the above provisions with respect to such modifications of this Order as are necessary under the above paragraphs to assure that the Order is Acceptable for Processing in accordance with applicable law.

Several years after the divorce became final, the federal Office of Personnel Management ("OPM") informed appellant that she was not eligible for appellee's survivor benefits pursuant to federal law.[7]

On January 25, 2006, appellant filed, in the Circuit Court for Montgomery County, a complaint which contained three claims: Count I—Rescission, Count II—Unjust Enrichment, and Count III–Attorney's Fees. On November 1, 2006, appellee filed a Motion for Summary Judgment, arguing that he had complied with the contract, and that there was no basis, in law or equity, for appellant's claim. On December 14, 2006, appellant filed an opposition to appellee's Motion for Summary Judgment. The trial court denied appellee's Motion for Summary Judgment on January 8, 2007.

After a trial, in April 2007, the Circuit Court determined that the mistake regarding appellant's eligibility for the survivor's annuity was a mistake of law, rather than a mistake of fact, as appellant had argued. In its ruling, the trial court noted that a mistake of law could not be the basis for rescinding the contract. Regarding the unjust enrichment, quasi-contract claim, the court determined that, although ap-

---

7. In its decision, OPM noted that, pursuant to 5 C.F.R. § 838.802(b) (2008), in the case of a retiree who retired before May 7, 1985, "a court order awarding a former spouse survivor annuity under CSRS is not a court order acceptable for processing unless the retiree was receiving a reduced annuity to provide a survivor annuity to benefit that spouse on May 7, 1985." Because appellee's annuity was not reduced to provide appellant a survivor annuity on or before May 7, 1985, appellant, it appears, is not entitled to benefits.

Appellant appealed this administrative decision to the federal Merit Systems Protection Board, and Chief Administrative Judge William L. Boulden affirmed OPM's decision.

pellee may have been unjustly enriched, appellant had waived her right to this equitable claim in paragraph five of the Agreement. That paragraph states, in relevant part: "the parties hereby mutually and irrevocably waive and abandon all manner of claim against each other and their estates, regardless of the legal, factual, or equitable basis for any such possible claim." Finally, the trial court denied appellant's request for attorney's fees.

Appellant filed a notice of appeal to the Court of Special Appeals.[8] Before any proceedings in the intermediate appellate court, we granted certiorari. *Janusz v. Gilliam,* 402 Md. 352, 936 A.2d 850 (2007).

## DISCUSSION

 This case requires us to interpret a property settlement agreement which was incorporated, but not merged, into a Judgment of Absolute Divorce. Such agreements are subject to the general rules of contract interpretation. *See PaineWebber, Inc. v. East,* 363 Md. 408, 413–14, 768 A.2d 1029, 1032 (2001). Without deciding the question, we have previously noted that "other courts have characterized the [survivor's benefits plan] as a separate and distinct [marital] property interest." *Matthews v. Matthews,* 336 Md. 241, 253, 647 A.2d 812, 818 (1994) (citing cases from Illinois, Washington, and California). The Court of Special Appeals has said that "the right to a survivor annuity is incident to the marital relationship, and that such a right, analogous to the right to the pension benefits themselves, falls within the definition of marital property." *Potts v. Potts,* 142 Md.App. 448, 463, 790

---

8. In her brief, appellant presents the following question for review:
 Did the Trial Court err in failing to restore Plaintiff's/Appellant's consideration to her after finding that the Parties' contract had failed due to a mutual mistake leading to an impossibility of performance by Defendant/Appellee even though the COAP required Plaintiff/Appellant to receive "benefits equivalent"?
 Appellee cross-appeals and presents the following question:
 Did the trial court err in finding that Defendant/Appellee had been unjustly enriched by Plaintiff/Appellant's ineligibility to receive benefits from his government pension?

A.2d 703, 712 (2002) (quoting *Pleasant v. Pleasant*, 97 Md. App. 711, 725, 632 A.2d 202, 209 (1993)). We agree that the survivor's annuity in this case was marital property and subject to division under the Agreement entered into between appellant and appellee.

In her complaint, appellant presented two separate bases for relief: rescission of the contract, and unjust enrichment, a quasi-contract theory. Although appellant did not specifically ask the court, in her complaint, to enforce the COAP, because she prayed for "such other relief as the Court deems equitable and fair" and because she argued the point at trial and raised it in her answer to appellee's motion for summary judgment, we address the point here. We will also address the trial court's finding that appellant waived her claim to a cause of action for unjust enrichment.

## I. Rescission

We begin our discussion of rescission by noting that "[n]o party has a right to rescind or modify a contract merely because he [or she] finds, in the light of changed conditions, that he [or she] has made a bad deal." *Harford County v. Town of Bel Air*, 348 Md. 363, 384, 704 A.2d 421, 431 (1998) (quoting *McKeever v. Washington Heights Realty Corp.*, 183 Md. 216, 220, 37 A.2d 305, 308 (1944)). Furthermore, "it is not within the power of either party to rescind [a valid contract] without an option to do so or without the consent of the other party, in the absence of fraud, duress or undue influence, or unless the equities are such that he [or she] should not be permitted to enforce it." *McKeever*, 183 Md. at 219–20, 37 A.2d at 308. Because the trial court did not find that there was any fraud, duress or undue influence, the court determined that rescission of the contract was inappropriate, as a matter of law. Notwithstanding that, we shall remand this case to the trial court to determine whether the COAP effectively modified the Agreement.

Appellant argues that the Agreement should be rescinded because the parties made a mutual mistake. Equity

will reform a contract where there has been a mutual mistake of fact in the formation of the contract. *Maryland Port Admin. v. John W. Brawner Contracting Co., Inc.,* 303 Md. 44, 58, 492 A.2d 281, 288 (1985). In this case, however, the mutual mistake was one of law. "A mistake of law is where a person knows the facts of a case but is ignorant of the legal consequences." *State v. American Bldg. & Loan Ass'n,* 177 Tenn. 385, 150 S.W.2d 1048, 1065 (1941). Both parties, in the case at bar, mistakenly believed [9] that appellant could receive survivor benefits under the federal Civil Service Retirement System, even after their divorce. Without reaching the question, this Court has opined that it is not clear that a mutual mistake of law "would be grounds for relief in Maryland." *Ferrero Constr. Co. v. Dennis Rourke Corp.,* 311 Md. 560, 578 n. 8, 536 A.2d 1137, 1145 n. 8 (1988); *see also Hoffman v. Chapman,* 182 Md. 208, 213, 34 A.2d 438, 441 (1943) (noting that "[t]he general rule is accepted in Maryland that a mistake of law in the making of an agreement is not a ground for reformation").

 The rule that a mistake of law is not grounds for rescission is founded on the principle that ignorance of the law is no excuse. *American Bldg. & Loan Ass'n,* 150 S.W.2d at 1065. *See also Burggraff v. Baum,* 720 A.2d 1167, 1169 (Me.1998) (holding that a mistake of law is not a basis to rescind a contract). In *Burggraff,* the Supreme Judicial Court of Maine noted that "[t]he rationale behind this rule is that the parties are presumed to know the law, or at least [are] capable of verifying it, whereas they cannot be expected to be acquainted with all factual matters, regardless of their diligence." *Burggraff,* 720 A.2d at 1169. We agree with this rationale. In addition, since both parties were represented by counsel in the negotiation of the Agreement, they were on an equal footing to know or learn what relevant law applied to their

---

**9.** The trial court noted in its ruling that "[n]either the plaintiff nor defendant was aware of the prohibition in the law, which would prevent an earlier named wife from receiving those benefits once the parties were divorced."

interests and the courts will not relieve them of their failure to do so. As such we hold that the mutual mistake of law made by the parties is not, as a matter of law, grounds for rescission.

## II. Unjust Enrichment

In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, "may not be brought where the subject matter of the claim is covered by an express contract between the parties." *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D.Md.1998)). Although we rarely depart from this long-standing rule, we have recognized exceptions, "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Dashiell*, 358 Md. at 100, 747 A.2d at 608–09 (footnotes omitted).

The trial court ruled that this last exception, where the express contract does not fully address the subject matter, applied. The court noted that "this rehabilitative paragraph number three, when it talks about the survivor annuity, doesn't really fully address what's going to happen if [appellant is ineligible for the survivor's annuity]." Because the court's determination that the contract does not fully address the survivor's annuity was a legal conclusion, we review that determination *de novo*. *Griffin v. Bierman*, 403 Md. 186, 195, 941 A.2d 475, 480 (2008).

Paragraph 12 of the Agreement states in relevant part: "[t]he parties hereby agree that there shall be no modifications of this Agreement except in writing and executed with the same formality of this Agreement." It is arguable whether the COAP constituted a modification of the Agreement. The trial court did not make any determination, in its ruling, as to whether the COAP qualified as a modification to

the original Agreement. The COAP provides, in relevant part:

If any provision of this Order designated for implementation by the Office of Personnel Management is found by that agency to be unacceptable for processing, the parties shall renegotiate their Agreement, if necessary, and draft a revised Order which will accord with both their intent and the agency's requirements insofar as that is possible.

The COAP provides for the very situation that arose in this case, specifically, what is required of the parties if the Office of Personnel Management should find that the order is "unacceptable for processing," a term of art that encompasses what the OPM decided here. In that case, according to the provisions of the COAP, the parties are to renegotiate. If, on remand, the trial court determines that the COAP is an effective modification of the Agreement, then as a matter law, the contract provides for the possibility that OPM may deny appellant's claim. Because the contract, if it is found by the trial court to have been modified by the COAP, fully addresses the issue of the survivor's annuity, as a matter of law, then, appellant cannot recover under the theory of unjust enrichment. If, however, the trial court determines that the COAP is not an effective modification, the court shall determine whether appellant is entitled to appropriate relief on her unjust enrichment claim.

 Clearly, a COAP is analogous to a Qualified Domestic Relations Order ("QDRO"). A QDRO is an order that has great significance in state domestic relations practice. *Rohrbeck v. Rohrbeck,* 318 Md. 28, 35, 566 A.2d 767, 771 (1989). A QDRO is required to transfer pension benefits from one beneficiary to another, either pursuant to the Marital Property Disposition Act, or through an attachment in aid of a support obligation. *Id.* at 35–36, 566 A.2d at 771. A QDRO can be "either collateral to a judgment as an avenue for enforcement or it can be an integral part of the judgment itself." *Potts,* 142 Md.App. at 459, 790 A.2d at 710 (citing *Rohrbeck,* 318 Md. at 42–43, 566 A.2d at 774). In *Marquis v. Marquis,* 175 Md.App. 734, 757, 931 A.2d 1164, 1177 (2007),

the Court of Special Appeals addressed an appellant's argument that a Constituted Pension Order ("CPO"), the functional equivalent of a QDRO for military retirement pay, modified the judgment of absolute divorce. Because the intermediate appellate court did not agree that the CPO modified the judgment, the court did not reach the question of whether such an order can effectively modify an earlier judgment. *Id.* In the present case, the COAP may be construed to be a modification to the Agreement.[10] If the trial court determines that the COAP is an effective modification of the Agreement pursuant to the requirements for modification set forth in the original Agreement, the COAP constitutes an integral part of the judgment itself, and not merely an avenue for enforcement.

Appellee contends that the COAP is ineffective because he did not authorize his attorney to sign the COAP on his behalf. In Maryland, "there is a *prima facie* presumption that an attorney has authority to bind his [or her] client by his actions relating to the conduct of litigation." *Rawlings v. Rawlings,* 362 Md. 535, 570–71 n. 30, 766 A.2d 98, 118 n. 30 (2001). In this case, the trial court did not rule on whether appellee's attorney had the authority to bind his client by signing the COAP. If, on remand, the court determines that the COAP, if validly executed, is an effective amendment to the Agreement, it will then need to decide whether appellee's attorney had the authority to bind appellee.

## III. Waiver

In its ruling, the trial court determined that appellant waived her right to all claims against her former husband, "no matter the equitable basis." The trial court based this deter-

---

**10.** Where, as here, an agreement is incorporated, but not merged, into a judgment, "the agreement survives as a separate and independent contractual arrangement between the parties." *Johnston v. Johnston,* 297 Md. 48, 56, 465 A.2d 436, 440 (1983). As such, after the entry of the final judgment, the Agreement remained as an independent contract that the parties were free to modify, pursuant to the terms of their contractual arrangement.

mination on the following waiver language, contained in the Agreement: "the parties hereby mutually and irrevocably waive and abandon all manner of claim against each other and their estates, regardless of the legal, factual, or equitable basis for any such possible claim." This analysis does not take into consideration both the surrounding language, and the context in which that waiver was made.

When we interpret a contract, we examine the contract as a whole, in order to determine the intention of the parties. *Moscarillo v. Professional Risk Management Services, Inc.*, 398 Md. 529, 540, 921 A.2d 245, 251 (2007). We also examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution." *Id.* (quoting *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 224–25, 695 A.2d 566, 569 (1997)). The trial court disregarded the language immediately preceding the quoted language, which qualifies the waiver. Immediately preceding the language the trial court referred to are the words "apart from the agreements and promises specifically set forth in this Agreement." Because we examine the contract as a whole, we hold that, as a matter of law, the waiver is qualified by language excluding claims relating to the Agreement.

Additionally, we look at the contract's purpose. *Moscarillo*, 398 Md. at 540, 921 A.2d at 251. In this case, the purpose of the Agreement was to delineate each party's responsibilities with respect to the disposition of marital property. The trial court's interpretation of the waiver language leads to the unreasonable result that the contract waives the right to enforce the very agreement that it creates. Taking into consideration the contract as a whole, and its purpose, we do not believe the parties intended the waiver provision to waive appellant's right to modify and enforce the Agreement.

## CONCLUSION

We hold that a mutual mistake of law is not grounds for rescission of an otherwise valid contract, nor is it the basis for

a claim of unjust enrichment. Furthermore, appellant's claim of unjust enrichment cannot succeed if the Agreement fully addresses the subject matter. Therefore, on remand, the trial court should determine whether the COAP was a valid modification to the Agreement, in which case the Agreement would fully address the situation at hand. Finally, we hold that, as a matter of law, the appellant did not waive her right to modify or to enforce the Agreement.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS NEITHER AFFIRMED NOR REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS AS LIMITED BY THIS OPINION. APPELLEE TO PAY THE COSTS.**