61 A.3d 91

CUESPORT PROPERTIES, LLC

v.

CRITICAL DEVELOPMENTS, LLC.

No. 2752, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Feb. 27, 2013.

**608**

Bruce R. Kurlander, Columbia, MD, for appellant.

Edward W. Brady (Fratus Brady, LLC, on the brief) Annapolis, MD, for appellee.

Panel: KRAUSER, C.J., MEREDITH and MATRICCIANI, JJ.

KRAUSER, C.J.

Cuesport Properties, LLC, appellant, sold a commercial condominium unit in Anne Arundel County to Critical Developments, LLC, appellee. Under the terms of the agreement of sale, Cuesport Properties, as the seller, was to build a demising wall[1] between Critical Developments' unit and an adjacent unit. Cuesport Properties was to complete the wall within thirty days of closing and, if it failed to do so, to pay liquidated damages in the amount of $126 per day until completion. The wall was finished on time, as required by the agreement of sale, but construction was performed without a building permit, and the wall did not comply with the Anne Arundel County code,[2] a failing that Critical Developments learned of while it was undertaking further planned interior improvements to the property.

Nearly five months later, Critical Developments arranged for the wall to be modified so as to comport with the code. At least 260 days had elapsed from the date of the contractual deadline for completion of the demising wall to the date that Critical Developments' contractor completed modifications to that wall so as to bring it into compliance with the county code.

---

**1.** A demising wall is a "[b]oundary that separates one tenant's space from that of the other, and from the common corridor." *See* BusinessDictionary.com, definition available at http://www.businessdictionary.com/definition/demising-wall.html (last visited Jan. 16, 2013).

**2.** Although there was no evidence as to the specific code provisions that were violated, neither party, as the court below would later observe, disputed that the wall, as originally constructed by Cuesport's contractor, did not comply with the Anne Arundel County Code.

Critical Developments thereafter brought an action in the Circuit Court for Anne Arundel County against Cuesport Properties for breach of contract, requesting damages for, among other things, lost rental and loss of use of the property. Following a bench trial, the Anne Arundel circuit court entered judgment in favor of Critical Developments and awarded liquidated damages for the 260 days that had elapsed from the date of the contractual deadline until the date that modification of the wall was completed.

Challenging that decision, Cuesport Properties noted this appeal, raising three issues for our review. Rephrased and redacted of argument, they are:

I.  Whether the circuit court erred in construing the *per diem* damages provision as a lawful liquidated damages clause rather than as an unlawful penalty;

II. Whether the circuit court erred in awarding damages, based on a *per diem* damages provision in the agreement of sale; and

III. Whether the circuit court erred in failing to take equitable considerations into account when it awarded damages for each of 260 days.

We conclude that the contractual language at issue is a valid liquidated damages provision, that Cuesport Properties breached the agreement of sale by building a demising wall that did not comply with the county code, that the circuit court did take equitable considerations into account in awarding damages, and that it did not err in awarding liquidated damages for each of the 260 days that had elapsed from the date of the contractual deadline until the date that modification of the wall was completed. We therefore affirm.

### Background

Cuesport Properties owned a commercial building, known as the "Severn Commerce Center," in Anne Arundel County. It subdivided certain space in the building, which had formerly housed a pool hall, into three separate units, that is, into "Units 3, 4, and 5."

In May 2008, Cuesport Properties and Critical Developments entered into an agreement of sale whereby Critical Developments agreed to purchase "Unit 4" from Cuesport Properties. The agreement provided, among other things, that Cuesport Properties build a demising wall separating Unit 4 from Unit 3 (ownership of the latter Cuesport Properties retained) and that the wall be built "within 30 days from the date of closing of this sale, at [Cuesport's] sole cost and expense." Although the agreement further provided that the property "shall not be in violation of any governmental laws, ordinances, rules, or regulations or the subject of any court action," it mandated, in contravention of the county code, that the wall be "of the same type, materials, and specifications as the demising wall which [Cuesport Properties] recently installed in an adjoining unit previously owned or being sold by [Cuesport Properties]." It appears that neither party knew, at the time of the formation of the contract, that the "recently installed" wall referred to in this provision did not comply with the county code. The agreement further required Cuesport Properties to install a separate electrical improvement (specifically, a 400–ampere service line) for Unit 4 "within 60 days from the date of closing."

After asserting that time was "of the essence," the agreement, in a paragraph labeled "Late Performance," provided that, if Cuesport Properties did "not accomplish and complete the above-described work relating to the installation of the demising wall within 30 days from the date of the completion of the closing, [Cuesport Properties] shall pay a penalty to [Critical Developments] of $126 per day for each day that this work is not completed," payable "within 10 days from the completion of such work." Moreover, in accordance with the terms of the agreement of sale, $20,000 was to be taken from the sale's proceeds and placed in escrow, to be used for payment of the work required to be performed by Cuesport Properties, as well as any damages that might accrue for failure to complete that work on time and "any late performance penalty." Any funds that remained, after these sums were paid, were to be released to Cuesport Properties.

On June 20, 2008, the parties closed on the sale of Unit 4. Within thirty days, the demising wall was completed by a contractor hired by Cuesport Properties, and the wall was built in compliance with the clause of the agreement of sale requiring that the wall be of "the same type, materials, and specifications as the demising wall which [Cuesport Properties had] recently installed" between Units 4 and 5. But, no building permit was obtained by the seller, Cuesport Properties, or its contractor, nor was the wall constructed in conformity with the applicable county code provisions, as required by paragraph 3.7 of the agreement of sale, which provided that the property "shall not be in violation of any governmental laws, ordinances, rules, or regulations or the subject of any court action." Unaware of these violations of county law, the parties accepted the wall as built and approved payment to the contractor from the escrow fund established by their agreement.

In November 2008, well after the thirty-day contractual deadline for completion of the demising wall, Critical Developments, while undertaking further planned interior improvements to Unit 4, learned that no county building permit for construction of the demising wall had ever been obtained and that the wall did not comply with the relevant provisions of the county code. Ordered by the county to bring the wall into compliance with the county code, Critical Developments applied for a permit to rebuild the wall. But that permit, for reasons the record does not disclose, was not issued until February 4, 2009, delaying reconstruction of the wall until at least that date.

Moreover, the electrical work, which Cuesport Properties was required to perform, under the agreement of sale, was not completed in a timely manner. Michael Hanlon, the electrician whose company, M & S Electric Inc., had been hired by Cuesport Properties to perform the electrical work, testified, at the trial of this matter, that he had been asked to provide two 200–ampere service lines and had given Cuesport Properties a price quote for those lines, but that, in November 2008, he was informed by Cuesport's real estate agent that the

agreement of sale (to which, of course, neither he nor his company was a party) required a single 400–ampere line. It was not until March 4, 2009, one month after a permit was issued to rebuild the wall, that M & S Electric obtained a permit for installation of the electrical service.

During a three-week period from March 25, 2009, to April 16, 2009, the electrical work was completed, inspected, and approved by the county, and the wall was rebuilt in compliance with the pertinent provisions of the county code. Finally, on August 28, 2009, after all construction had been completed and approved by county building inspectors, an occupancy permit was issued for Unit 4, the unit purchased by Critical Developments.

Well before that date, however, Critical Developments, dissatisfied with the delays, filed, on April 2, 2009, a breach of contract action against Cuesport Properties, in the Anne Arundel circuit court, seeking to recover damages for the loss of use of the property and rental income, and for other fees, dues, and costs caused by the delay in completing the electrical service, as well as attorneys' fees in accordance with the agreement of sale. Cuesport Properties responded with an answer and a counterclaim, asserting that, though it had completed the demising wall and electrical service, Critical Developments had refused to consent to the release of funds from the escrow fund, to pay for that work, in breach of the agreement of sale. It therefore requested that it be paid from those funds as well as be reimbursed for the legal fees and costs it had incurred.[3]

At the conclusion of the bench trial which ensued, the circuit court found that the demising wall was built in accordance with "the explicit requirements" of the agreement of sale. But, because that wall was built without the required Anne Arundel County permit and did not comply with the county code, "it had to be rebuilt," a task which, the court found, was

---

3. Cuesport Properties later waived its claim for legal fees and costs during trial.

completed "not sooner than" April 7, 2009. The circuit court further found that electrical service "was substantially completed by April of 2009 and that thereafter any required completion ... was precluded or not made possible by [Critical Developments'] contractors," and furthermore that Cuesport's "obligations under the contract," as to that service, "were completed not later than March 31st, 2009," that is, a week before the demising wall was brought into compliance with code requirements.

The circuit court concluded that Cuesport's failure to comply with county permit and code requirements in building the demising wall breached an "implied ... requirement that the construction be completed in a manner consistent with the [law]." Then, declaring the "penalty" provision in the agreement of sale to be a liquidated damages clause, the trial court calculated damages for a period of 260 days, running from July 21, 2008, through April 6, 2009, and accordingly awarded Critical Developments $32,760 in damages, a figure it arrived at by multiplying the $126 *per diem* rate stipulated in the agreement of sale by 260, the number of days that had elapsed between the contractual deadline and the date that the wall had been brought into compliance with the code. It also awarded Critical Developments $10,443.74 in attorneys' fees.

Although the court below acknowledged that Cuesport Properties had failed to complete the electrical service within the contractual time limits, it nonetheless held that there was "no breach of the electric requirement" to avoid granting Critical Developments a double recovery, as the damages flowing from Cuesport's tardy completion of electrical service, which was primarily loss of rental value, would be, as the court put it, "redundant" if it were to award damages based on that loss in addition to liquidated damages, as well as "speculative" because Critical Developments' expert was unable to state with reasonable certainty that the property would have been rented during the time between the expiration of the sixty-day electrical deadline and the date that Cuesport Properties completed the electrical service. Expressing a desire not to "turn the liquidated damages clause into a penalty" through

the imposition of "cumulative" remedies, the court declared that "recovery [would] be limited to the liquidated damages clause for the failure to complete the demising wall in a timely fashion." It then ordered that the remaining escrow balance of $9,935 be released to Critical Developments within thirty days in partial payment of the damages award.

## DISCUSSION

### I.

■ Cuesport contends that the trial court erred in construing the *per diem* damages provision of its agreement of sale, with Critical Developments, as a valid liquidated damages clause rather than as an invalid penalty, pointing out that the "Late Performance" clause used the term "penalty," in describing what was to be paid by Cuesport Properties in the event of a failure to complete construction of the demising wall on time. But, before we consider the merits of this claim, we must first address the threshold issue of whether this claim has been preserved for our review.

As Critical Developments notes, Cuesport Properties failed to raise this issue below. Nonetheless, the issue was preserved for review because it was, in effect, considered by the circuit court, when that court declined to award damages for loss of rent to avoid imposing "an unreasonable penalty." *See* Md. Rule 8–131(a) (stating that, "[o]rdinarily," an appellate court will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court").

■ We now turn to the merits of Cuesport's claim. In so doing, we observe that the term "liquidated damages" has been defined by the Court of Appeals as "a specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." *Traylor v. Grafton,* 273 Md. 649, 661, 332 A.2d 651 (1975) (citation and quotation omitted). But, "a clause purporting to provide liquidated damages will be deemed invalid as a penalty where

the amount agreed upon is grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract." *Barrie School v. Patch,* 401 Md. 497, 509, 933 A.2d 382 (2007) (citation and quotation omitted). Consequently, "Maryland courts will uphold a liquidated damages clause as valid, and not a penalty, if it satisfies two primary requirements": (1) "the clause must provide a fair estimate of potential damages at the time the parties entered into the contract"; and (2) "the damages must have been incapable of estimation, or very difficult to estimate, at the time of contracting." *Id.* at 510, 933 A.2d 382.

In applying that test, the "nomenclature used by the parties, although a circumstance, is not," the Court of Appeals has cautioned, "determinative in passing upon whether or not the payment of the designated sum is in fact a penalty." *Traylor,* 273 Md. at 661, 332 A.2d 651. Rather, the "decisive element," according to Maryland's highest Court, is the intention of the parties, that is, "whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach," and this is "to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution." *Id.* But "if there is doubt whether a contract provides for liquidated damages or a penalty, the provision," we are told, "will be construed as a penalty." *Barrie School,* 401 Md. at 510, 933 A.2d 382 (citation and quotation omitted).

As the party challenging the enforceability of the "Late Performance" clause, Cuesport Properties bore "the burden of proving that the clause should not be enforced." *Id.* at 507, 933 A.2d 382. It failed to do so. In fact, it did not even raise this issue below, and that omission, we surmise, led to its failure to introduce any evidence to support the claim it now raises on appeal, namely, that the "Late Performance" clause is a penalty and not a liquidated damages clause. Consequently, we need not and therefore shall not disturb the circuit court's holding that that clause is valid and enforceable.

In any event, it is clear that the "Late Performance" clause is, indeed, a valid and enforceable liquidated damages clause. Although the "Late Performance" clause employs the term "penalty," at one point, that factor, alone, though relevant, is hardly conclusive, *Traylor,* 273 Md. at 661, 332 A.2d 651, as the purpose of that provision was to compensate the party owed the duty of prompt performance for anticipated losses, not to penalize the party that failed to fulfill that duty. The monthly cost that the parties estimated that Critical Developments would incur for Unit 4, at the time of the execution of the contract, was approximately $3,800 per month. When that figure is divided by 30, the average number of days in a month, the daily cost is $126.67, a figure which differs from the stipulated *per diem* "penalty" by less than a dollar. Thus, the amount of liquidated damages—$126 *per diem*—was not "grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from" such a breach. *Barrie School,* 401 Md. at 509, 933 A.2d 382. On the contrary, the "Late Performance" clause provided "a fair estimate of potential damages at the time the parties entered into the contract." *Id.* at 510, 933 A.2d 382.

Moreover, the actual damages in the instant case would have been "very difficult to estimate, at the time of contracting." *Id.* To perform such calculations, at the time of contract execution, required that the parties be able to accurately predict whether Critical Developments would have succeeded in finding a suitable tenant and on what date that tenancy would have commenced or, in the alternative, whether Critical Developments itself would, in fact, have been able to use the property profitably. Neither of these outcomes could have been predicted, at the time of contract execution, with any degree of certainty. *See* Richard A. Lord, 24 *Williston on Contracts* § 65:18 (4th ed.2002), at 311 (observing that, in building and construction contracts, "each day's delay, while unquestionably injurious, is injurious frequently in ways that are difficult to estimate").

Finally, the "decisive element" in determining whether a provision is a liquidated damages clause, and not a penalty, is

the intention of the parties, that is, "whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach." *Traylor, supra,* 273 Md. at 661, 332 A.2d 651. That the parties, in the instant case, clearly intended that the provision at issue be a liquidated damages clause is supported by testimony and stipulations into which the parties entered at trial.

During Critical Developments' direct examination of Kurt Ziem, the managing member of Cuesport Properties, LLC, the following exchange took place:

[Critical Developments' counsel]: Okay. Now the second amendment to the agreement of sale, which is an exhibit in this case, provided liquidated damages in the amount of $126 a day beyond the 30 days if the wall was not built correct. Is that right?

[Mr. Ziem]: Yes, it was.

Gregory Lilly, president of Critical Developments, LLC, gave testimony of a similar nature:

[Critical Developments' counsel]: With respect to the demising wall portion of the work, to your recollection, and the contract is in front of you, but did the contract call for liquidated damages in the event that the demising wall was not constructed within the 30 days?

[Mr. Lilly]: Yes.

[Critical Developments' counsel]: And do you recall what the amount was?

[Mr. Lilly]: I want to say $126 a day.

And, among the facts stipulated to by the parties, at trial, was that, pursuant to the agreement of sale, an escrow agent was entrusted, by the parties, with $20,000 provided by Cuesport Properties, "for the payment of costs for various improvements to the property as described in such Second Amendment and for the payment of any liquidated damages incurred by Plaintiff as specified in the Second Amendment."

In light of that testimony, the stipulation of facts, the purpose of the provision, and the prospective reasonableness

of the *per diem* award, we conclude that the *per diem* damages provision is a liquidated damages clause and not a penalty provision, and the circuit court correctly upheld it as such.

## II.

█ Cuesport contends that the circuit court erred in awarding liquidated damages because its contractor completed the demising wall before the thirty-day contractual deadline and in accordance with the express terms of the agreement of sale. Then, looking at the entire agreement of sale, Cuesport claims that it cannot be held to that agreement because of a mutual mistake, that is, the parties did not realize that the terms of the agreement of sale permitted, if not required, the demising wall be built in such a fashion as to violate county law.

To begin with, we note that Cuesport Properties does not suggest that the circuit court erred in holding that the Anne Arundel County Code was impliedly incorporated into the agreement of sale, and with good reason, as the lower court was clearly correct in so holding. That is because, in the words of the Court of Appeals:

> "Generally, unless a contract provides otherwise, the law applicable thereto at the time and place of its making, including constitutional and statutory provisions and judicial precedents, is as much a part of the contract as though it were expressly referred to and incorporated in its terms; and the same is true of the law of the place where it is to be performed. The reason for this rule ordinarily is that it is presumed that the parties had such law in contemplation when the contract was made.... *Municipal ordinances* have been held to come within the rules just stated."

*Denice v. Spotswood I. Quinby, Inc.*, 248 Md. 428, 433–34, 237 A.2d 4 (1968) (quoting 17A C.J.S. *Contracts* § 330 (1963)) (emphasis in original).

As the agreement of sale did not provide otherwise, the circuit court was required to interpret it in conformity with

the county code. And, notwithstanding the failure of the parties and the court below to even mention it, paragraph 3.7 of the original agreement of sale expressly states that the "Property," that is, Unit 4, "not be in violation of any governmental laws, ordinances, rules, or regulations or the subject of any court action." There is, moreover, nothing in the "second amendment" to the agreement that overrides or nullifies this provision. We therefore conclude that the agreement of sale required that the demising wall be built in conformity with the county code.

Nonetheless, Cuesport Properties, as the circuit court found, did not provide a code-compliant demising wall within the thirty-day period prescribed by the agreement of sale, and, as a result, it breached that agreement, a conclusion which Cuesport Properties does not appear to contest. Rather, it suggests that it should be excused from performance of the agreement of sale because of mutual mistake. When we turn to *Janusz v. Gilliam*, 404 Md. 524, 947 A.2d 560 (2008), we quickly learn why that suggestion has no merit.

In *Janusz*, a husband and wife entered into a separation and property settlement agreement which provided, among other things, that the husband would maintain in effect his survivor's annuity, obtained through his federal employment, for the wife's benefit. Several years later, the parties discovered, upon their divorce, that the now ex-wife could no longer be eligible to receive benefits provided by that annuity because, under federal law, as an ex-wife, she is not entitled to them. As a consequence, she sought rescission of that agreement, in the circuit court, on grounds of mutual mistake. *Id.* at 528–29, 947 A.2d 560. The trial court held that the mutual mistake of the parties as to her eligibility for the survivor's annuity was a mistake of law, which "could not be the basis for rescinding the contract." *Id.* at 533, 947 A.2d 560.

In upholding that decision,[4] the Court of Appeals enunciated a legal principle which, we believe, is relevant here: A mistake

---

4. The Court of Appeals neither affirmed nor reversed the judgment but, instead, remanded the case, under Maryland Rule 8–604(d), for further

of law, that is, a mistake " 'where a person knows the facts of a case but is ignorant of the legal consequences,' " is not grounds for rescission of a contract, at least where both parties "were on an equal footing to know or learn what relevant law applied to their interests." *Id.* at 536–37, 947 A.2d 560 (quoting *State v. Am. Bldg. & Loan Ass'n,* 177 Tenn. 385, 150 S.W.2d 1048, 1065 (1941)).

In fact, that principle is even more applicable to the instant case than the case in which it was first promulgated, as the instant case involved, unlike *Janusz,* two sophisticated business entities, and those entities entered into an arms-length transaction involving the sale of real estate. The two entities—Cuesport Properties and Critical Developments—apparently believed that, if the demising wall were, in the words of that agreement, "of the same type, materials, and specifications as the demising wall which the Seller [had] recently installed" between Units 4 and 5, it would satisfy code requirements and that there was no need to obtain a building permit prior to its construction.[5] These are mistakes of law, not of fact, and therefore, they provide no basis for relieving Cuesport Properties of its contractual obligations.

Moreover, if the parties' mutual belief that the demising wall, specified to be "of the same type, materials, and specifications as the demising wall which the Seller [had] recently installed" between Units 4 and 5, would comply with the county code, is a mistake of fact, such a mistake does not, under the circumstances of the instant case, provide grounds for relieving Cuesport Properties of its contractual obligations. To understand why that is so, we turn to *Restatement (Sec-*

---

fact-finding as to whether the parties had validly modified their separation and property settlement agreement, because the purported modification "would fully address the situation at hand." *Janusz v. Gilliam,* 404 Md. 524, 541, 947 A.2d 560 (2008).

5. Whether both parties actually believed that a permit was not required is unclear. By stating, as Cuesport Properties does, that the parties mutually believed that a permit was not required, we are giving Cuesport Properties the benefit of the doubt.

*ond) of Contracts* § 154 (1981) ("When a Party Bears the Risk of a Mistake") [6]:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

In the instant case, as noted previously, paragraph 3.7 of the original agreement of sale states that Unit 4 "not be in violation of any governmental laws, ordinances, rules, or regulations or the subject of any court action." Moreover, the "second amendment" provides, among other things, that the demising wall "shall be constructed within 30 days from the date of closing of this sale at [Cuesport's] sole cost and expense" and that Critical Developments "agrees to make the unit available for [Cuesport's] contractors or subcontractors for such construction."

It is manifest, when the provisions of the agreement of sale are read together, that Cuesport Properties was solely responsible for the timely completion of the demising wall and ensuring that it was not in violation of "any governmental laws, ordinances, rules, or regulations." Thus, under subsection (a) of the *Restatement,* the risk of mistake was plainly placed upon Cuesport Properties "by agreement of the parties."

Furthermore, even if the agreement did not expressly allocate the risk of mistake to Cuesport Properties, it was "rea-

---

**6.** The drafters of the *Restatement* have declined to rely any further on what they regarded as ultimately an untenable distinction between mistakes of law and mistakes of fact. *Restatement (Second) of Contracts* § 151 cmt. b (1981) ("The rules stated in this Chapter do not draw the distinction that is sometimes made between 'fact' and 'law.' They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time.").

sonable in the circumstances to do so" under subsection (c) of the *Restatement,* because Cuesport Properties was responsible for building the wall, and thus it was Cuesport's implied responsibility to ensure that the wall be built in compliance with the county code as well as to obtain the necessary permits. Furthermore, it is reasonable to assign the risk of mistake to Cuesport because had Cuesport Properties applied for the necessary permits prior to beginning construction, it would have learned that the wall, as planned, violated county law and would have therefore been able to avoid the delays involved in reconstructing that wall.

## III.

■ Cuesport next contends that the circuit court erred in awarding damages for the delay in completing the demising wall, not only because it "fail[ed] to take equitable consider-ations into account," but because it also failed to make any factual findings with respect to the reasonableness of the delay that occurred between the time when the wall was required to have been completed and the time when the wall was finally made code-compliant.[7] In the absence of such findings, the circuit court lacked, maintains Cuesport Proper-ties, a factual basis for its award of damages. Critical De-

---

7. Cuesport Properties also appears to contend that it should have been given an opportunity to cure the deficiencies in the demising wall but that it was not. Although it is well established, as a matter of contract law, that, generally, a breaching seller may have an opportunity to cure a breach, *see, e.g.,* Md.Code (1975, 2002 Repl.Vol.), § 2–508(2) of the Commercial Law Article (providing, as to sale of goods, that a seller, who "had reasonable grounds to believe" that nonconforming goods "would be acceptable," may, "if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender"), it is not so clear, in the specific context of a contractual liquidated damages provision, that a nonbreaching buyer must provide a seller with an opportunity to cure a breach. (After all, "time is of the essence.") In fact, if the buyer ensures that the breach is cured within a commercially reasonable time, it would seem to be irrelevant whether the seller was given an opportunity to cure, at least where, as here, the buyer is not seeking additional damages for costs incurred in arranging for the demising wall to be brought into compliance with the county code. Because Cuesport Properties presents no authority to support its con-

velopments, construing Cuesport's "equitable considerations" argument as, in effect, an assertion that it, Critical Developments, was under a duty to mitigate its damages but failed to do so, counters that, under *Barrie School, supra,* 401 Md. 497, 933 A.2d 382, it had no duty to mitigate damages and that, thus, the lower court's damages award should be upheld.

We disagree with Critical Developments' construction of Cuesport's "equitable considerations" argument. In our view, this argument, and the related assertions as to inadequate factual findings, should be understood in light of a problem in applying a *per diem* liquidated damages clause when a contractor has abandoned a project.[8] That problem is, as noted by a classic treatise, that a *per diem* liquidated damages provision must be construed so as to not "go on operating forever," as it would then "in fact operate as a penalty." Joseph M. Perillo, 11 *Corbin on Contracts* § 58:21 (2005 rev. ed.), at 523. With this framework in mind, we turn to consider Cuesport's contentions.

Although it is true, as Critical Developments points out, that the Court of Appeals stated, in *Barrie School,* 401 Md. at 515, 933 A.2d 382, that "there exists no duty to mitigate damages where a valid liquidated damages clause exists," that case is distinguishable, as to this particular issue, from the instant case because, here, unlike in *Barrie School,* the liquidated damages clause provides for a *per diem* amount rather than a single, fixed sum.

In *Barrie School,* a private school (The Barrie School) required the parents of prospective students to enter into an

---

tention that it had to be given an opportunity to cure, we decline to address this issue.

**8.** We do not intend to use "abandon" in any pejorative sense, as it is undisputed that Cuesport Properties believed, at the time the thirty-day contractual deadline expired, that it had completed work on the demising wall. Nonetheless, Cuesport's intention to complete the wall on time and its belief, at the time the thirty-day contractual deadline expired, that it had done so, are irrelevant in light of its actual failure to timely complete that construction.

enrollment agreement, which provided that they pay a non-refundable tuition deposit, as well as promise to pay, in two installments, the remainder of tuition due for the upcoming school year. Parents could cancel that agreement upon written notice by a specified date; in which event, they would forfeit only the deposit. *Id.* at 501, 933 A.2d 382. But, on the other hand, if they withdrew their child after that specified date, they were obligated to pay tuition and expenses for the entire year as liquidated damages. *Id.*

The Patches enrolled their daughter in the Barrie School, but then withdrew her after the specified deadline, whereupon The Barrie School brought a breach of contract action against them, in the District Court of Maryland, to recover the tuition and expenses, as well as attorneys' fees. *Id.* at 502, 933 A.2d 382. Among the defenses raised by the Patches were that the liquidated damages provision in the enrollment agreement was an unenforceable penalty and that the school was under a duty to mitigate damages but had not done so. *Id.*

Although the District Court held that the liquidated damages provision in the enrollment agreement was valid and not a penalty, it found that the school had done "absolutely nothing" to try to find another student to enroll in place of the Patches' daughter, despite having been informed of her withdrawal in the July preceding the start of the school year. *Id.* at 503–04, 933 A.2d 382. Then, concluding that the school's "failure to mitigate damages was fatal to its claim," *id.* at 503, 933 A.2d 382, the District Court declined to enforce the liquidated damages provision of the enrollment agreement and entered judgment in favor of the Patches. On appeal, the Circuit Court for Montgomery County "agreed with the District Court" and affirmed, stating that, "even though the liquidated damages clause was valid and not a penalty, The Barrie School had a duty to mitigate damages." *Id.* at 505, 933 A.2d 382.

But the Court of Appeals disagreed. Although it upheld the liquidated damages clause, as the two lower courts had, it, unlike those two courts, found that the Patches were liable for the entire amount of liquidated damages specified by the

enrollment agreement. In so doing, it opined that liquidated damages *are* the remedy that the parties agreed to in case of a breach, " 'obviat[ing] the need for the nonbreaching party to prove actual damages.' " *Id.* at 513, 933 A.2d 382 (quoting 24 *Williston on Contracts, supra,* § 65:1 at 230). Mitigation, on the other hand, is "part of a court's determination of actual damages that have resulted from a breach," a determination rendered unnecessary once the parties "have included a reasonable sum that stipulates damages in the event of breach." *Id.* Thus, in the Court's view, the purpose of the liquidated damages provision in that case would be "blunted" if the nonbreaching party were required to mitigate damages. *Id.* at 514, 933 A.2d 382.

In that case, however, the actual amount of liquidated damages was a fixed sum, while, here, only the rate at which liquidated damages were to accrue was fixed beforehand. When, as here, the party obligated to perform under a contract that has a *per diem* liquidated damages provision unwittingly fails to do so, prior to completion of the work contracted for, a *per diem* liquidated damages provision could, theoretically, operate for an indefinitely long time period of time, and the damages that accrue could reach an extravagant amount, far beyond what the parties had intended and believed to be reasonable at the time of contract formation and, in effect, amount to a penalty.

Although no Maryland appellate court has addressed this issue, the appellate courts of several other states have. Those decisions are generally in accord with the following passage from *Corbin on Contracts:*

> That a reasonable pre-estimate may in fact operate as a penalty and become unenforceable is shown by the fact that even though the sum fixed as compensation for each day's delay ... is held to be a reasonable provision for liquidated damages and to be enforceable, no court will permit it to go on operating forever.

11 *Corbin on Contracts, supra,* § 58:21 at 523.

That treatise then observes that there is "some lack of uniformity in the method of determining this time limit." *Id.*

In general, there are two rules that courts have applied to this predicament. Some courts have held that a liquidated damages clause is inapplicable when a contractor has completely abandoned a project. *See, e.g., City of Elmira v. Larry Walter, Inc.,* 76 N.Y.2d 912, 563 N.Y.S.2d 45, 564 N.E.2d 655, 656 (1990) (per curiam) (holding that, in the absence of "clear and unambiguous language" indicating that liquidated damages clause was intended to apply to contractor's "outright abandonment of the project," no such damages should be awarded). Others have held that, when a contractor has abandoned a project, operation of a *per diem* liquidated damages provision is limited to "the time reasonably necessary for the plaintiff to procure completion of the agreed performance by a substitute contractor or by the plaintiff's own efforts." 11 *Corbin on Contracts, supra,* § 58:21 at 523–24. *See, e.g., City of Boston v. New England Sales & Mfg. Corp.,* 386 Mass. 820, 438 N.E.2d 68, 70 (1982); *Oregon State Highway Comm'n v. DeLong Corp.,* 9 Or.App. 550, 495 P.2d 1215, 1230 (1972).

■ We reject the view that a liquidated damages clause is inapplicable when a contractor has completely abandoned a project, because adoption of such a rule would, in the words of the Supreme Judicial Court of Massachusetts, "permit a party to limit his liability for liquidated damages by totally abandoning the work and would deny the injured party those damages which were agreed to as fairly measuring damage caused by delay." *City of Boston,* 438 N.E.2d at 70. The rule which we endorse is that, where liquidated damages accumulate over a period of time, those damages may be limited by the court to whatever time is reasonably necessary to comply with contractual demands or, more specifically, as in this case, to complete the work by a substitute contractor or by the non-breaching party's own efforts.[9]

---

9. We further note that, under the circumstances of this case, we would obtain the same result by a rote application of the *per diem* liquidated

Even so, we find no basis for disturbing the circuit court's damages award. For one thing, it was Cuesport's burden, as the party challenging the reasonableness of the liquidated damages award, *Barrie School,* 401 Md. at 507, 933 A.2d 382, to show that Critical Developments' efforts to repair the demising wall and bring it into compliance with the code were not performed within a reasonable time, and it has failed to meet that burden.

We should note that the implication of Cuesport's position is that Critical Developments unduly delayed taking actions to cure the deficiencies in Unit 4. But this implication finds no support in the evidence and it furthermore does not comport with the obvious incentive Critical Developments had to resolve the problems with Unit 4 as soon as reasonably possible, since it had just agreed to pay $470,000 for that property and was responsible for mortgage expenses of some $3,800 per month, but could not use the property for any profitable purpose.

In fact, Gregory Lilly, president of Critical Developments, LLC, testified that he "was a dead duck in the water" because he could not obtain an occupancy permit for Unit 4 and could not legally operate his business from that site until the demising wall was rendered code-compliant and electrical service was installed, neither of which was performed on time by Cuesport Properties despite its contractual duty to do so. Although Cuesport's failure to timely install electrical service, unlike its failure to timely provide a properly built demising wall, did not fall within the scope of the liquidated damages provision in the agreement of sale, its breach of the electrical service requirement nonetheless had a direct and adverse impact on Critical Developments' ability to use its property, and furthermore, as the court below found, both deficiencies existed nearly contemporaneously, until the beginning of April 2009. It is clear that the circuit court did not, without

---

damages provision without consideration of whether such a provision should be construed as including an implied reasonableness limitation. But obviously, under that assumption, appellant does not prevail.

reflection, simply multiply 260 by $126 per day but took into consideration whether the damages award was reasonable. Under these circumstances, the circuit court's decision to deny damages for Cuesport's breach of the electrical service requirement while awarding liquidated damages for the entire 260–day time period from the date of the contractual deadline until the date that modification of the wall was completed was an appropriate exercise of judgment and reflected that court's sensitivity to "equitable considerations."

As a consequence, we shall affirm the circuit court's judgment in its entirety.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**